**In re LOMAS FINANCIAL CORPORATION, et al., Debtors.**

**Nos. 93 Civ. 5696 (TPG), 93 Civ. 7790 (TPG).**

United States District Court, S.D. New York.

Aug. 26, 1994.

---

**4**

Ronald S. Itzler, Fischbein, Badillo, Wagner, Itzler, New York City, for appellant Park Intern. Service.

Gregor Baer, Davis, Polk & Wardwell, New York City, for debtor Lomas Financial Corp.

## OPINION

GRIESA, Chief Judge.

These are two consolidated bankruptcy appeals by Park International Service Co., Inc. from orders of Bankruptcy Judge Burton R. Lifland. The first is from an order dated May 27, 1993 denying certain claims against the debtor. The second is from an order dated September 15, 1993 denying reargument of the original order.

Both orders are affirmed.

### FACTS

On September 24, 1989 Lomas Financial Corporation and its subsidiaries filed voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code. One of the subsidiaries was Ellco Leasing Corporation. At some point, apparently after the commencement of the bankruptcy proceeding, Lomas entered into a contract to sell stock of Ellco to General Electric Capital Corporation for $161 million, subject to the approval of the Bankruptcy Court. A hearing on the sale was held by the court on April 19, 1990. Included in the issues before the court was the question of whether to approve the payment of a commission to Lazard Freres & Co. Lazard had been retained by Lomas, with the approval of the court, to give advice with respect to possible sales of assets.

Park appeared in the proceeding and objected to any approval of the transaction which did not award Park a commission to which Park claimed to be entitled for having introduced Lomas to GECC. The matter was heard by Judge Lifland, who approved the sale and a commission for Lazard, and overruled the objection of Park, stating in substance that the proper thing for Park to do was to file a claim.

The bar date, pursuant to court order, for filing claims was July 31, 1990.

On May 1, 1990 Park filed an administrative priority claim seeking a commission of $2,415,000 on the Ellco sale. Park claimed that a representative of Lomas and a representative of Park discussed the possibility of Park aiding Lomas with its financial problems by introducing it to a source of capital. Park alleged that subsequently its representatives introduced representatives of Equitable Life Leasing Corporation (the former name of Ellco) to representatives of GECC and communicated with both of them on a regular basis about the possibility of GECC's making financing available to Lomas' failing businesses. Park asserted that both the Ellco and GECC representatives advised it that its compensation would be built into any transaction between Ellco and GECC. Park claimed that, on the basis of these alleged facts, it was entitled to a commission on the Ellco sale.

On December 30, 1991 the court confirmed a plan of reorganization for Lomas. It was a condition to the consummation of the plan that the aggregate amount of the Class VI or general unsecured claims not exceed $14 million, including both disputed and undisputed claims. On January 28, 1992 the court entered an Order in Aid of Consummation which estimated certain claims in Class VI for purpose of reserve and reiterated the $14 million cap on Class VI claims as a condition to consummation. The plan was consummated on January 31, 1992.

Park's administrative priority claim remained to be dealt with. On September 4, 1992 Lomas filed a motion for summary judgment seeking disallowance of Park's administrative priority claim. Lomas argued, among other things, that there was no basis for administrative priority because whatever services Lomas may have performed were carried out prior to the filing of the bankruptcy petition. On the merits, Lomas denied that there was a contract to pay Park a commission.

While this motion was pending, on September 15, Park amended its claim to change it from an administrative priority claim to a general unsecured claim. Although the Ellco transaction closed post-petition, Park's activities, whatever they were, occurred pre-petition. Consequently, Park was asserting a general unsecured claim and was no longer seeking priority status.

On February 9, 1993 Lomas made a motion to disallow the amended claim of Park. The matter was heard by Judge Lifland on May 17, at which time he handed down a bench decision disallowing the administrative claim and also disallowing the general unsecured claim asserted in the amendment. The administrative claim had essentially been abandoned. In any event, the judge noted that Park was never retained and was never involved in the transactions post-petition, and that nothing was set forth which provided a basis for the allowance of the Park claim as an administrative claim.

The bulk of the bench decision was devoted to the issue of the amended claim. Here the specific issue dealt with was whether the amendment should be allowed. The judge held that it was in fact an amendment, and not an entirely new claim, because it was based on the factual allegations set forth in the original administrative claim. However, the court held that it would be inequitable to allow the amendment. In balancing the equities, the judge considered five factors: whether there would be undue prejudice to an opposing party; whether the claimant had engaged in bad faith or dilatory behavior; whether other creditors would receive a windfall if the amendment were not allowed; whether other creditors would be harmed or prejudiced; and lastly, the claimant's justification for the inability to file the amended claim at the time the original claim was filed. The judge did not find bad faith, but found that each of the other factors weighed against permitting Park to amend the claim.

The judge's ruling focused primarily on whether other parties would suffer prejudice if Park were permitted to amend its claim, answering that question in the affirmative. While other creditors would not receive a windfall if Park's amendment were not al-

lowed, the judge determined, they would suffer prejudice if it were allowed. In addition to the substantial delay that would follow such amendment, the judge noted that allowing the amendment would either reduce the pro rata distributions to other unsecured creditors treated under Class VI of the plan of reorganization or require that the distribution scheme contemplated in the plan be revamped. The judge also found that Park had not proffered any reasonable justification for waiting until after receiving the summary judgment motion of Lomas before it filed the amended claim. The judge thus concluded that it would be inequitable to permit Park to amend its original claim.

An order embodying these rulings was signed by Judge Lifland on May 27, 1993.

On June 4, 1993 Park filed a notice of appeal from the order of May 27.

On June 8, 1993 Park filed in the Bankruptcy Court a motion for reargument of the May 1993 ruling. The motion for reargument was denied by Judge Lifland from the bench on September 15, 1993. The judge held that he was divested of jurisdiction because the matter was on appeal.

Park filed a notice of appeal from the September 15 ruling on September 27.

## DISCUSSION

### The Administrative Priority Claim

Although Park's first notice of appeal refers to the original administrative claim as well as to the amended claim, it has not pressed the administrative claim issue on appeal. Park concedes that whatever services it performed or whatever activities it engaged in occurred prior to the filing of the bankruptcy petition, so that there is no basis for priority.

### Amendment Asserting General Unsecured Claim

The decision as to whether to permit an amendment of a proof of claims rests within the sound discretion of the bankruptcy judge. *In re McLean,* 121 B.R. 704, 708 (Bankr.S.D.N.Y.1990).

In the present case, since the amendment occurred subsequent to the time period established by the court for filing claims, the threshold question is whether it was indeed an amendment or merely a new claim under the guise of an amendment. *See G.L. Miller & Co.*, 45 F.2d 115 (2d Cir.1930). Judge Lifland held in favor of Park on this point, noting that the facts relied on in the amendment were the same as those alleged in the original claim.

At this point Judge Lifland properly engaged in a balancing of the equities to determine if the amendment should be allowed. This court agrees with Judge Lifland's disallowance of the amendment based on the equities.

The intention of the amendment was to transform the claim from an administrative priority claim to a general unsecured claim. This means that allowing the amendment would have the effect of adding an unsecured claim of $2.4 million at a time when a plan of reorganization had not only been confirmed, but had been confirmed in reliance upon the amount of the general unsecured claims as they existed. Consummation of the plan was conditioned on the general unsecured claims not exceeding $14 million. The allowance of Park's amended claim would have seriously disturbed the plan which had been arrived at.

Moreover, there was no legitimate reason why Park's claim could not have been asserted as a general unsecured claim in May 1990 when the purported administrative priority claim was filed. The facts were perfectly clear that showed no entitlement to administrative priority.

It is difficult to see how Judge Lifland could have ruled otherwise than to disallow the amendment.

*The Denial of Reargument*

The motion for reargument was properly denied. There was no basis for reargument. In any event, the matter was already on appeal and the Bankruptcy Court no longer had jurisdiction.

## CONCLUSION

The order of the Bankruptcy Court dated May 27, 1993 denying Park's claims is affirmed. The order of the court of September 15, 1993 denying reargument is affirmed.

SO ORDERED.