### In re NEW YORK MEDICAL GROUP, P.C., Debtor.

### No. 00 B 40363(SMB).

United States Bankruptcy Court, S.D. New York.

Aug. 9, 2001.

**410**

Gair, Gair, Conason, Steigman & Mackauf, Attorneys for Joyce Saunders, New York City, Howard S. Hershenhorn, of Counsel.

Arent Fox Kintner Plotkin & Kahn, PLLC, Attorneys for Debtor, Washington, DC, Stephanie Wickouski, Christopher J. Giaimo, Jr., of Counsel.

Thelen Reid & Priest LLP, Attorneys for the Official Committee of Unsecured Creditors, New York City, Martin G. Bunin, Robin Spigel, of Counsel.

Fisher & Fisher, Attorneys for New York Medical Group Retirement Plan & Trust, New York Medical Group Profit Sharing Plan and New York Medical Group Trust for Union Employees, New York City, Laurence J. Kaiser.

## MEMORANDUM DECISION GRANTING PERSONAL INJURY CLAIMANT'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

STUART M. BERNSTEIN, Chief Judge.

Joyce Saunders, a creditor, petitions for relief from the automatic stay. She seeks to continue a pre-petition medical malpractice action against the debtor and two physicians previously employed by the debtor, and if successful, enforce her judgment against the debtor's insurance policy. She intends to recover the balance from the estate to the extent of her share of the *pro rata* distribution made to the class of unsecured creditors.

Her motion is strenuously opposed by the debtor, the Official Committee of Unsecured Creditors (the "Committee") and the New York Medical Group Retirement Plan & Trust, the New York Medical Group Profit Sharing Plan and the New York Medical Group Trust for Union Employees, Bronx East Center (the "Pension Plans") (the debtor, the Committee and the Pension Plans are referred to, collectively, as the "Objectors"). They contend that the liquidation of Saunders' claim in state court will severely prejudice the other unsecured creditors by delaying the payment of their dividends and diluting their recoveries.

The motion requires consideration of when and under what circumstances it may be appropriate to lift the stay to allow a creditor to liquidate a personal injury claim in state court. Here, the relevant factors tip decidedly in Saunders' favor. Accordingly, her motion is granted.

## BACKGROUND

The facts material to Saunders' motion are not in dispute. The debtor consisted of a group of physicians that provided medical services to patients insured by HIP Health Plan of New York. The debtor filed this chapter 11 case on March 2, 2000, as a result of numerous disputes with HIP. The debtor no longer operates, and its employee-physicians now work elsewhere.

Saunders contends that she was treated pre-petition by Judit Gellen and Ivan Kahn, two doctors employed by the debt-

or.[1] She alleges that they failed to diagnose or treat her colon cancer. Lacking actual knowledge of the bankruptcy case, she commenced a medical malpractice action against the debtor and the two physicians in the Supreme Court, New York County, in December, 2000. She learned about the bankruptcy in March 2001, and after ascertaining that a bar date had come and gone, she filed a late $10 million claim on April 6, 2001. I permitted the late claim, over the objection of the debtor and the Committee, under the doctrine of "excusable neglect." *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).

The mere pendency of the Saunders claim may have a profound effect on the timing of any payments to unsecured creditors under the proposed "pot plan."[2] According to current projections, the estate will distribute approximately $1.1 million to the class, or as much as 50% of the allowed amount of the claims, excluding Saunders. When added to the mix, however, the Saunders claim represents 80% of the unsecured debt, cutting the distribution to between 9% and 10%. The debtor must reserve, or hold back, the amount necessary to pay the Saunders claim to the extent it is ultimately allowed. This means that the debtor must reserve $880,000.00 of the $1.1 million available for distribution until the Saunders claim is resolved. Moreover, any payment to Saunders will reduce the amount in the

"pot" available to the other members of the unsecured class.

Saunders filed her stay relief motion with the aim of liquidating her claim in the state court, collecting what she can immediately from the debtor's available insurance, and looking to the estate for any unpaid balance. The debtor is insured by the Group Council Mutual Insurance Company under a policy in the amount of $1 million/$3 million. The insurer is already defending the two former employees, and would also defend the debtor.

The Objectors do not oppose Saunders' efforts to liquidate the claim in state court, provided her recovery is limited to the insurance, and she waives her claim against the estate for the unpaid balance. Otherwise, they fear that the liquidation of her claim will take years to complete, delay the distribution, and if her claim is allowed, significantly dilute the recoveries otherwise payable to the other unsecured creditors.

## DISCUSSION

### A. The Claims Process and Medical Malpractice Claims

To put the issue in perspective, it is worthwhile to review the method for determining the allowed amount of medical malpractice and other personal injury claims. Saunders' claim is based on a pre-petition tort, and is therefore, general and unsecured. Ordinarily, a creditor holding a general unsecured claim files her claim in the bankruptcy court, 11 U.S.C. § 501(a),

1. Although Saunders' state court complaint states that the two physicians were employed by the debtor and were acting within the scope of their employment, the complaint implies that the physicians treated Saunders while acting on behalf of another entity—N.Y. Primary Care, P.C. This inconsistency should be dealt with, through motion practice if necessary, in the state court.

2. Under a "pot plan," the debtor pays a fixed amount, and the percentage that each creditor receives depends on the total amount of allowed claims sharing the "pot." *In re Witkowski*, 16 F.3d 739, 741 (7th Cir.1994).

and the claim is deemed allowed unless a party with standing objects. 11 U.S.C. § 502(a). Objections are resolved in the bankruptcy court, and the claims objection process usually results in the liquidation of the allowed amount of the claim.

▪ The same claim filing requirements apply to Saunders,[3] but the objection and liquidation processes differ. The objection to a personal injury claim is a non-core matter, 28 U.S.C. § 157(b)(2)(B), and the bankruptcy court lacks jurisdiction to liquidate a personal injury claim. *In re United States Lines, Inc.,* No. 97 Civ. 6727(MBM), 1998 WL 382023, at *4 (S.D.N.Y. July 9, 1998), *aff'd,* 216 F.3d 228 (2d Cir.2000). No one has objected to Saunders' claim, but it must still be liquidated. The procedure governing liquidation of a personal injury claim is set out in 28 U.S.C. § 157(b)(5) which states:

> The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

▪ Although § 157(b)(5) expressly directs the district court to transfer the venue of the personal injury litigation to one of two federal courts, the district court may also abstain in favor of a non-bankruptcy forum. *Coker v. Pan Am. World Airways, Inc. (In re Pan Am. Corp.),* 950 F.2d 839, 844 (2d Cir.1991); *Citibank, N.A. v. White Motor Corp. (In re White Motor Corp.),* 761 F.2d 270, 273 (6th Cir. 1985). The party seeking relief under § 157(b)(5) must make the motion in the district court in the district in which the

bankruptcy case is pending, *In re United States Lines, Inc.,* 216 F.3d 228, 234 (2d Cir.2000); *Murray v. Pan Am. World Airways, Inc. (In re Pan Am. Corp.),* 16 F.3d 513, 516 (2d Cir.1994), but the district court may act without a formal motion in appropriate circumstances. *United States Lines, Inc.,* 1998 WL 382023, at *5. In either case, abstention is the exception, transfer the rule. *In re Pan Am. Corp.,* 950 F.2d at 846.

▪ The bankruptcy court cannot exercise the authority granted to the district court under § 157(b)(5). *In re United States Lines, Inc.,* 216 F.3d at 234. Nevertheless, the bankruptcy court's decision to grant stay relief is akin to abstention under § 157(b)(5) since both leave the case to be tried in the appropriate non-bankruptcy court. The two powers are distinct, however, and can be reconciled. Thus, while the bankruptcy court has the power to grant relief from the automatic stay to permit the commencement or continuation of personal injury litigation in a state or federal court, *see United States Lines, Inc.,* 1998 WL 382023, at *2, its decision does not affect the debtor's right to move in the district court under § 157(b)(5) to transfer the litigation in accordance with that provision. *Pieklik v. Hudgins (In re Hudgins),* 102 B.R. 495, 497 (Bankr. E.D.Va.1989); *accord In re Thomas,* 211 B.R. 838, 842–43 (Bankr.D.S.C.1997).

In the present case, none of the parties has sought relief in the district court under 28 U.S.C. § 157(b)(5). The only issue before this Court is whether Saunders should be granted relief from the automatic stay, and it is to this question that we now turn.

## B. Relief From the Automatic Stay

▪ Section 362(d)(1) of the Bankruptcy Code permits a court to modify the stay

---

**3.** In fact, her failure to file her claim prior to the general bar date led to the motion practice noted above.

for "cause." The party opposing stay relief has the ultimate burden of disproving the existence of "cause," *see* 11 U.S.C. § 362(g)(2), but the movant has the initial burden to show that "cause" exists. *E.g., Mazzeo v. Lenhart (In re Mazzeo),* 167 F.3d 139, 142 (2d Cir.1999); *Sonnax Industries, Inc. v. Tri Component Products Corp. (In re Sonnax Industries, Inc.),* 907 F.2d 1280, 1285 (2d Cir.1990). The burden does not shift if the movant fails to make this showing, and in that event, the court should refuse to grant stay relief. *In re Mazzeo,* 167 F.3d at 142; *Capital Comm. Federal Credit Union v. Boodrow (In re Boodrow),* 126 F.3d 43, 48 (2d Cir.1997), *cert. denied,* 522 U.S. 1117, 118 S.Ct. 1055, 140 L.Ed.2d 118 (1998).

■ Where a party seeks stay relief to commence or continue litigation in another forum, the bankruptcy court must weigh the request against the following factors in determining if "cause" exists: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*In re Sonnax Industries, Inc.,* 907 F.2d at 1286; *accord In re Mazzeo,* 167 F.3d at 142–43. The decision to lift the stay is committed to the court's discretion. *In re Sonnax Industries, Inc.,* 907 F.2d at 1286. Not all of the factors are relevant in every case, *In re Mazzeo,* 167 F.3d at 143; *see In re Touloumis,* 170 B.R. 825, 828 (Bankr.S.D.N.Y.1994), and the court need not assign equal weight to each factor. *In re Keene Corp.,* 171 B.R. 180, 183 (Bankr. S.D.N.Y.1994); *In re Touloumis,* 170 B.R. at 828.

■ Here, Saunders made a *prima facie* showing that "cause" exists by demonstrating that several *Sonnax* factors favor stay relief. The debtor's liability is vicarious, and the state court action is already proceeding against the two employee-physicians. The state court is the only forum that can award complete relief to all parties, (Factor # 1), and accordingly, stay relief will promote judicial economy. (Factor # 10.) Further, in spite of the fact that the resolution of the litigation may affect the distributions, the litigation itself will not interfere with the bankruptcy case. (Factor # 2.) It does not involve the time or attention of the debtor's current personnel, and will not affect the ability to confirm the proposed "pot plan." In addition, the debtor's insurer is already defending the doctors, and will also defend the debtor. (Factor # 5.) As a consequence of this showing, the burden shifted to the Objectors, requiring them to demonstrate the absence of "cause."

The Objectors did not key their arguments to the *Sonnax* factors. Nevertheless, they contend, in the main, that the continuation of the state court litigation against the debtor will prejudice the interests of the other creditors by delaying and

ultimately diluting their recoveries. (Factor # 7.) The "delay" argument, however, overlooks the fact that the creditors will suffer the same prejudice whether or not I grant Saunders' motion. The mere pendency of Saunders' unliquidated claim forces the debtor to hold back 80% of the amount available for distribution to the unsecured class. In truth, the only way to free up the reserve and distribute the entire balance is by liquidating Saunders' claim. *See In re Hudgins,* 102 B.R. at 497. Thus, the creditors will suffer delay until Saunders' claim is liquidated, and right now, the state court is the only place that can do it.

The "dilution" argument fails for a more basic reason: it rests on the flawed premise that the payment of large allowed claims constitutes legal prejudice. Without doubt, the Saunders claim, allowed in any amount, will reduce the recovery available to other creditors. The same, however, can be said about every other claim, including the Pension Plans which hold an allowed priority claim in the sum of $1.5 million and an allowed unsecured claim exceeding $1 million. Saunders, like the Pension Plans and the other creditors, has the right to her *pro rata* distribution based on the allowed amount of her claim. Conversely, denying her this right would grant a windfall to the other creditors.[4]

■ Accordingly, the Objectors have failed to demonstrate prejudice, and the *Sonnax* factors support the award of stay relief. As a fallback, the Objectors propose that I deny her motion and order mediation. A bankruptcy court, in this regard, may deny stay relief in favor of mediation where the time and expense of litigating a substantial number of personal injury claims would seriously threaten the reorganization. *See Kubicik v. Apex Oil Co. (In re Apex Oil Co.),* 884 F.2d 343, 349 (8th Cir.1989)(recognizing the authority but remanding for further development of the record). The Objectors have not shown, however, that allowing Saunders to continue her state court lawsuit will threaten the debtor's reorganization. They have not identified any other unliquidated personal injury claims, the continuation of the litigation will not interfere with the debtor's operations (the debtor is liquidating and has no operations), increase administrative costs (the debtor's insurer will handle the defense) or interfere with the debtor's ability to confirm its "pot plan."

In any case, Saunders has agreed to mediation, and I have appointed Hon. Stanley S. Ostrau, a retired state court judge, to act as mediator. Nevertheless, Saunders has argued convincingly that she needs discovery to assess her claim and participate in the mediation. The Objectors, in this regard, declined to consent to be bound by discovery of the two doctors conducted in the debtor's absence, and the Committee even suggested that it might attend their depositions and cross-examine. Under these circumstances, and accepting the Objectors' argument that the trial is not imminent, bringing the debtor into the state court action at this time to participate in discovery is the only sensible course.

Alternatively, the Objectors recommend that I withhold my decision on the motion until they have had the opportunity to seek estimation of the claim in the district court. Initially, they have not sought estimation in the two months since I granted

---

4. The Objectors' insistence that I require Saunders to waive her claims against the estate (beyond what the debtor's insurance covers) is the same argument, and suffers from the same error. The Objectors have not pointed to any authority authorizing a court to disallow Saunders' claim, to the extent that it exceeds available insurance, because it will dilute the amount available to other creditors.

Saunders' motion to file her claim after the bar date. More important, granting stay relief does not preclude estimation. Under 11 U.S.C. § 502(c), a claim may be estimated for purposes of allowance if it is unliquidated and liquidation would unduly delay the administration of the case. Saunders' claim is unliquidated, and if liquidation will take too long and unduly delay the distribution of the estate's assets, as the Objectors argue, estimation may be appropriate.

The Objectors' authorities are distinguishable, and do not alter my conclusions. For example, the district court *In re W.T. Grant Co.,* 160 B.R. 35 (S.D.N.Y.1993), dismissed a litigious *pro se* debtor's appeal based on his failure to prosecute, and then refused to grant him relief from the dismissal order because he failed to demonstrate "excusable neglect." *Id.* at 39–40. Among other things, the district court noted that the prosecution of the appeal would delay the imminent, final distribution in the eighteen year old case. *Id.* at 39. In contrast, this case is only eighteen months old, and the debtor has not even confirmed a plan much less made any distributions. Furthermore, Saunders demonstrated "excusable neglect" when she obtained leave, over the debtor's and the Committee's objection, to file her $10 million claim after the bar date.

In *In re Lomas Fin. Corp.,* 172 B.R. 3 (S.D.N.Y.1994), the district court affirmed a bankruptcy court order denying a creditor leave to file a post-confirmation amendment to its claim. The plan had been confirmed in reliance on the amount of general unsecured claims in existence, confirmation had been conditioned on a maximum amount of unsecured debt, and permitting the amendment would have added an additional $2.4 million of unsecured debt and "seriously disturbed the plan." *Id.* at 6. In addition, the creditor had failed to show why it could not have asserted the claim prior to confirmation. *Id.* Again, New York Medical Group has not confirmed a plan, and Saunders previously demonstrated that her failure to file a timely claim was due to "excusable neglect."

Finally, *In re Apex Oil Co.,* 118 B.R. 683 (Bankr.E.D.Mo.1990), concerned the categorical disallowance of *punitive damages* under a chapter 11 plan. The bankruptcy court concluded that (1) the plan could not be confirmed while the claims remained unliquidated, (2) the allowance of the punitive damage claims would prejudice the other unsecured creditors by diluting their recovery—a result at odds with the deterrent purposes of punitive damages and similar penalties, (3) the punitive damage claims could have been separately classified, and crammed down under the new value exception to the absolute priority rule and (4) the plan did not discriminate among punitive damage claims. *Id.* at 697–98. The court relied on its "well-accepted" and "inherent equitable power to disallow, limit, or subordinate Claims for punitive or exemplary damages or fines, penalties or forfeitures." *Id.* at 699.

Subsequent case law substantially undercuts this part of the *Apex* opinion. *See United States v. Reorganized C F & I Fabricators of Utah, Inc.,* 518 U.S. 213, 229, 116 S.Ct. 2106, 135 L.Ed.2d 506 (1996)(chapter 11 plan cannot, under principles of equitable subordination, separately classify and provide less favorable treatment to general unsecured tax penalty claims); *United States v. Noland,* 517 U.S. 535, 543, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996) (the bankruptcy court cannot equitably subordinate an administrative tax priority claim to achieve a more equitable distribution of assets in the absence of inequitable conduct); *In re Infiltrator Sys., Inc.,* 248 B.R. 707, 712 (Bankr. D.Conn.2000)(court may not disallow or subordinate a punitive damage claim un-

less the relevant facts and circumstances warrant it). Moreover, the issue before me does not involve the allowance of a punitive damage claim, but instead, the opportunity to liquidate a personal injury claim. If the state court awards punitive damages, any party in interest is free to make any available argument to expunge the punitive damage claim, or subordinate it to the payment of compensatory, unsecured claims.[5]

Finally, Saunders also seeks the right to enforce a judgment against available insurance. It comes as no surprise that the Objectors have not opposed this aspect of motion. According to their submissions, they previously consented to stay relief on 105 occasions where the claimant agreed to limit his or her recovery to available insurance, and waive any excess claims against the estate. In essence, the entry into these stipulations reflects a recognition that collecting a judgment from available insurance will not prejudice the estate, and the Objectors have not argued otherwise. In light of Saunders' *prima facie* showing of cause, the second branch of her motion is also granted.

Settle order on notice.

---

**5.** Despite the case law cited in the accompanying text, the possibility of subordinating punitive damage claims in a chapter 11 case remains open. Section 1122(a) of the Code states that claims placed within the same class must be substantially similar. Generally, claims are substantially similar if they share the same legal rights. *See In re Boston Post Road L.P.,* 21 F.3d 477, 483 (2d Cir. 1994), *cert. denied,* 513 U.S. 1109, 115 S.Ct. 897, 130 L.Ed.2d 782 (1995); *In re Treasure Bay Corp.,* 212 B.R. 520, 539 (Bankr. S.D.Miss.1997). Like tax penalty claims, punitive damage claims are subordinated to general unsecured claims in a chapter 7 liquidation, *see* 11 U.S.C. § 726(a)(4), and hence,

fare differently under the "best interest of creditors" test. *See* 11 U.S.C. § 1129(a)(7). This difference may justify the separate classification of punitive damage claims, or if classified with unsecured claims, their subordination to the payment of the unsecured claims. 7 Lawrence P. King, Collier on Bankruptcy ¶ 1122.03[4][d][ii], at 1122–18 (15th rev. ed.2001). The Supreme Court left this possibility open in *United States v. Reorganized C F & I Fabricators of Utah, Inc.,* 518 U.S. at 228 (nothing in the lower court decisions considered whether the treatment of the tax penalty claim might be sustainable under either § 1122(a) or the chapter 7 liquidation provisions).