In re ICE CREAM LIQUIDATION, INC. fka Fieldbrook Farms, Inc., Debtor.

**Beth Stranz, Corrinne Kemp and Elizabeth Stokes, Movants,**

**v.**

**Ice Cream Liquidation, Inc. fka Fieldbrook Farms, Inc., Respondent.**

**No. 01–34624 (LMW).**

United States Bankruptcy Court, D. Connecticut.

July 31, 2002.

Anna Marie Richmond, Esq., Richard H. Wyssling, Esq., Buffalo, NY, Byron Paul Yost, Esq., Westport, CT, for Movants.

Barry S. Feigenbaum, Esq., Rogin, Nassau, Caplan, Lassman & Hirtle, LLC, Hartford, CT, for Respondent/Debtor.

Wanda Borges, Esq., Syosset, NY, for The Official Committee of Unsecured Creditors.

## MEMORANDUM OF DECISION RE: MOTION FOR RELIEF FROM STAY, OBJECTION TO CLAIM, JURY TRIAL DEMAND AND ABSTENTION

LORRAINE MURPHY WEIL, Bankruptcy Judge.

Before the court are the following:

- Motion for Relief from Automatic Stay (Doc. I.D. No. 271, the "Lift Stay Motion") filed by Beth Stranz, Corrinne Kemp and Elizabeth Stokes (collectively, the "Plaintiffs") seeking modification of the automatic stay to permit them to prosecute to judgment against the above-referenced debtor certain litigation (the "Litigation") pending in the United States District Court for the Western District of New York (the "New York District Court");

- Debtor's Objection to Motion for Relief from Automatic Stay filed by Beth Stranz, Corrine [sic] Kemp and Elizabeth Stokes (Doc. I.D. No. 288, the "Stay Motion Objection");

- Debtor's Objection to Claim filed by Beth Stranz, Corrine [sic] Kemp and Elizabeth Stokes (Doc. I.D. No. 289, the "Claim Objection");

- Plaintiffs' Response to Objection to Proof of Claim and Demand for Jury Trial (Doc. I.D. No. 297, the "Jury Demand and Abstention Request") pursuant to which, among other things, the Plaintiffs assert a right to trial by jury in respect of the Claim Objection and request that this court abstain from adjudicating the Claim Objection in favor of the Litigation proceedings; and

- Debtor's Objection to "Response to Objection to Proof of Claim and Demand for Jury Trial" filed by Beth Stranz, Corrine [sic] Kemp and Elizabeth Stokes (Doc. I.D. No. 299, the "Jury Demand and Abstention Objection") pursuant to which the Debtor objects to the Jury Demand and Abstention Request.[1]

Hearings having been held in respect of the foregoing and the matters having been argued and briefed fully by the parties (including the Committee (as defined below)), the matters are ripe for the disposition provided for below.[2]

## I. BACKGROUND

This Chapter 11 case was commenced by voluntary petition filed by Fieldbrook Farms, Inc. (as later renamed, the "Debtor") on September 21, 2001. An official committee of unsecured creditors (the "Committee") has been appointed and is

---

**1.** The Lift Stay Motion, the Stay Motion Objection and the request for abstention (and objection thereto) set forth in the Jury Demand and Abstention Request and the Jury Demand and Abstention Objection (respectively) are core proceedings within the purview of 28 U.S.C. § 157(b). The Claim Objection and the Plaintiffs' related jury demand and the Debtor's objection thereto may be "core proceedings" (within the purview of 28 U.S.C. § 157(b)) in whole or in part, or may be proceedings "otherwise related to [this case]" within the purview of 28 U.S.C. § 157(c)(1) in whole or in part. Since this court does not adjudicate the Claim Objection or the related jury demand, it is not required now to determine whether those matters would be core or non-core when adjudicated (see discussion below).

**2.** This memorandum constitutes the findings of fact and conclusions of law required by Rule 52 of the Federal Rules of Civil Procedure (made applicable to this contested matter by Rule 9014 of the Federal Rules of Bankruptcy Procedure).

serving in this case. Pursuant to an order of this court dated December 20, 2001 and after an auction sale, the Debtor sold substantially all of its assets to a third party. In fulfillment of the terms of that sale, the Debtor changed its name to "Ice Cream Liquidation, Inc." On July 2, 2002, this court issued an order approving the First Amended Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code submitted jointly by the Committee and the Debtor. A confirmation hearing with respect to the related First Amended Joint Liquidating Plan of Reorganization is scheduled for August 13, 2002.

On December 3, 2001, the Plaintiffs filed in this case a proof of claim (Number 299, the "Proof of Claim") asserting a general unsecured claim in the amount of $6,000,000 with respect to the Litigation. If allowed in full, the referenced claim will be the largest claim in this case. Annexed to the Proof of Claim is a copy of the complaint (the "Complaint") in the Litigation.[3] The Complaint names as defendants certain persons including Dunkirk Ice Cream Co., Inc. ("Dunkirk") and the Debtor. Each of the Plaintiffs is a former employee of Dunkirk. On behalf of each Plaintiff and in addition to other alleged claims, the Complaint alleges claims for "[s]exual [h]arassment" against Dunkirk

under 42 U.S.C. § 2000e and/or Section 296 of the New York Executive Law. The Complaint contains thirty-five (35) counts. A very brief summary of the relevant counts of the Complaint is annexed as Schedule A hereto. With regard to all Plaintiffs, Count XXXIII alleges a claim against the Debtor (under its prior name, Fieldbrook Farms, Inc.) for "Successor Liability" in respect of all claims alleged by the Plaintiffs against defendant Dunkirk (the "Successor Liability Claim").[4]

Discovery in the Litigation is complete. There are cross-motions for summary judgment (the "Cross–Motions") pending in the Litigation; one of them is the Debtor's motion for summary judgment on the Successor Liability Claim. The Cross–Motions have been briefed fully and await only oral argument and a decision on whether supplemental responses to the Plaintiffs' second request for admissions and a certain affidavit should be stricken (the "Motion To Strike") from the record with respect to the Successor Liability Claim to make them ripe for decision.[5] A jury trial is scheduled in the Litigation.

Pursuant to the Lift Stay Motion, the Plaintiffs seek relief from stay to prosecute the Litigation to judgment against the Debtor and, pursuant to the Jury Demand and Abstention Request, seek to have this

---

**3.** The Litigation appears to have been commenced in or about July, 1997.

**4.** At least with respect to claims brought pursuant to title VII of the Civil Rights Act of 1964, §§ 703 *et seq.*, 78 Stat. 255 (as amended, 42 U.S.C. §§ 2000e *et seq.*) (hereafter referred to as "Title VII"), the liability of one entity for the Title VII violations of another entity on the theory of "successor liability" generally is determined by the following factors:

  1) whether the successor company had notice of the charge, 2) the ability of the predecessor to provide relief, 3) whether there has been a substantial continuity of business operations, 4) whether the new

employer uses the same plant, 5) whether he uses the same or substantially the same work force, 6) whether he uses the same or substantially the same supervisory personnel, 7) whether the same jobs exist under substantially the same working conditions, 8) whether he uses the same machinery, equipment and methods of production and 9) whether he produces the same product. *Equal Employment Opportunity Commission v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1094 (6th Cir.1974).

**5.** The Debtor's motion to vacate the order dismissing the complaint with prejudice against William C. Wells, Jr. and the Estate of William M. Wells, Sr. is also pending before the New York District Court.

court abstain from adjudicating the Claim Objection in favor of the Litigation proceedings. The Debtor objects to the foregoing *in toto*. However, as an alternative position, the Debtor urges that this court should at least exercise jurisdiction over the Successor Liability Claim. That, the Debtor urges, would allow the Debtor to establish (if it can) that it cannot be held liable as a successor for *any* liability Dunkirk may have to the Plaintiffs in respect of the Complaint, and thus permit the estate to avoid a needless (and expensive) defense in a potentially lengthy trial with regard to Dunkirk's liability to the Plaintiffs.[6]

6. A clerk's entry of default has been entered against Dunkirk in the Litigation, but default judgment has not been entered against Dunkirk.

7. Section 157 provides in relevant part as follows:

(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

(b) (1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

(2) Core proceedings include, but are not limited to—

.    .    .    .    .

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated *personal injury tort or wrongful death claims* against the estate for purposes of distribution in a case under title 11 . . . .

.    .    .    .    .

(5) The district court shall order that *personal injury tort and wrongful death claims* shall be tried in the district court in

For the reasons set forth below, the court determines that it should grant relief from stay in respect of, and abstain from, all relevant proceedings in respect of the Successor Liability Claim.

## II. DISCUSSION

### A. *Jurisdiction in Respect of Relief from Stay/Abstention*

During the course of briefing these matters, the Plaintiffs raised the issue of whether the Successor Liability Claim constitutes a "personal injury tort claim" within the purview of 28 U.S.C. § 157.[7] That

which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

(c) (1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

28 U.S.C.A. § 157 (West 2002) (emphasis added). The term "personal injury tort claim" also appears in 28 U.S.C. § 1411(a) which provides as follows:

Except as provided in subsection (b) of this section, this chapter and title 11 do not affect any right to trial by jury that an individual has under applicable nonbankruptcy law with regard to a personal injury or wrongful death tort claim.

28 U.S.C.A. § 1411(a) (West 2002).

issue has been briefed and argued by the parties at some length and its resolution could be an essential first step here. That is because (as discussed more fully below), to the extent that the Successor Liability Claim is a "personal injury tort claim", this court is without jurisdiction to set venue for any "trial" on such claim. *See* 28 U.S.C. § 157(b)(5). *Cf. Maritime Asbestosis Legal Clinic v. United States Lines, Inc. (In re United States Lines, Inc.)*, 216 F.3d 228, 234 (2d Cir.2000) ("We agree with the district court insofar as it determined that the bankruptcy court lacked the power to set venue under Section 157(b)(5). There is nothing in the language of Section 157(b)(5) to suggest that a bankruptcy court can determine venue [for trial in respect of 'personal injury tort claims'] . . . ."). The foregoing raises the following question: Would a grant of relief from stay and abstention (under 28 U.S.C. § 1334(c)) in order to allow prepetition proceedings to proceed in a federal district court outside of this district in respect of a "personal injury tort claim" be an invalid exercise by this court of the exclusive jurisdiction enjoyed by the district court for this district (the "Connecticut District Court") to set venue in respect of such claims? At least one court has implied that it would be. *See In re Poole Funeral Chapel, Inc.*, 79 B.R. 37 (Bankr.N.D.Ala. 1987). The court in *Poole Funeral Chapel* reasoned as follows:

> The 1984 amendments made it abundantly clear that Congress intended to remove dispositive control of personal injury [tort] . . . claims from bankruptcy courts. 28 U.S.C. § 157(b)(2)(B), (O), and (5). Congress placed the duty on the district court to decide whether to try personal injury tort and wrongful death cases as mandated by 28 U.S.C. § 157(b)(5), or to abstain under 28 U.S.C. § 1334(c)(1) and permit them to be tried in state courts. It would thwart

that Congressional purpose if bankruptcy judges made that choice under the guise of exercising core jurisdiction to terminate the stay when terminating the stay is the only choice available to bankruptcy judges.

*In re Poole Funeral Chapel, Inc.*, 79 B.R. at 39 n. 9.

Other courts expressly or impliedly reject the *Poole Funeral Chapel* rationale. *See, e.g., In re New York Medical Group, P.C.*, 265 B.R. 408 (Bankr.S.D.N.Y.2001). *See also Santa Clara County Fair Ass'n, Inc. v. Sanders (In re Santa Clara County Fair Ass'n, Inc.)*, 180 B.R. 564 (9th Cir. BAP 1995); *Calumet National Bank v. Levine*, 179 B.R. 117 (N.D.Ind.1995). In *In New York Medical Group, P.C.*, Chief Judge Bernstein reasoned as follows:

> The bankruptcy court cannot exercise the authority granted to the district court under § 157(b)(5). *In re United States Lines, Inc.*, 216 F.3d [228, 234 (2d Cir.2000)] . . . . Nevertheless, the bankruptcy court's decision to grant stay relief is akin to abstention under § 157(b)(5) since both leave the case to be tried in the appropriate non-bankruptcy court. The two powers are distinct, however, and can be reconciled. Thus, while the bankruptcy court has the power to grant relief from the automatic stay to permit the commencement or continuation of personal injury litigation in a state or federal court, *see United States Lines, Inc.*, 1998 WL 382023, at *2, its decision does not affect the debtor's right to move in the district court under § 157(b)(5) to transfer the litigation in accordance with that provision.

*In re New York Medical Group, P.C.*, 265 B.R. at 412.

This court believes that the *New York Medical Group, P.C.* view is more consis-

tent than is the *Poole Funeral Chapel* view with the Second Circuit's pronouncements in *Murray v. Pan American World Airways, Inc. (In re Pan Am Corp.),* 16 F.3d 513, 516 (2d Cir.1994).[8] Accordingly, this court adopts the *New York Medical Group, P.C.* view and holds that this court has jurisdiction to adjudicate the relief from stay and abstention matters submitted here even if the Successor Liability Claim is a "personal injury tort claim." However, (as will be more apparent below) the foregoing analysis does not moot the questions of (1) whether the Successor Liability Claim is a "personal injury tort claim" within the purview of Section 157(b) and (2) (if the answer to the first question is "yes") what jurisdiction this court has over proceedings in respect of the Successor Liability Claim under Section 157(b). Thus, this court now delves deeper into Section 157.

### B. *"Personal Injury Tort Claim" Vel Non*

■ The term "personal injury tort claim" appears in 28 U.S.C. § 157(b). The term is not expressly defined either in title 28 or in title 11. There is almost no helpful legislative history. As a result, there is disagreement in the courts as to what constitutes a "personal injury tort claim." Some courts adopt a "narrower" definition of the term. Those courts hold that a tort without trauma or bodily injury is not within the statutory exception for a "personal injury tort claim" under Section 157(b). *See, e.g., In re Atron Inc. of Michigan,* 172 B.R. 541 (Bankr.W.D.Mich.1994);

*Perino v. Cohen (In re Cohen),* 107 B.R. 453 (S.D.N.Y.1989). Other courts adopt a "broader" view that the term " 'personal injury [tort claim]' [arises out of] ... 'any injury which is an invasion of personal rights ...' ", *Leathem v. von Volkmar (In re von Volkmar),* 217 B.R. 561, 566 (Bankr. N.D.Ill.1998) (endorsing "broader" view as the "better view"). *Accord, e.g., Thomas v. Adams (In re Gary Brew Enters. Ltd.),* 198 B.R. 616 (Bankr.S.D.Cal.1996).

However, the court sees potential problems with both approaches. The "narrower" approach, by requiring physical injury or trauma, apparently ignores the fact that, in Section 522(d)(11) of the Bankruptcy Code, Congress knew how to say "personal *bodily* injury" when it wanted to, 11 U.S.C.A. § 522(d)(11) (West 2002) (emphasis added). *In re Poole Funeral Chapel, Inc.,* 63 B.R. 527, 530 (Bankr.N.D.Ala. 1986). Moreover, the "narrower" approach may put too much emphasis on a technical analysis of allegations of a complaint often drafted before bankruptcy and before the "personal injury tort claim" issue even existed. Finally, the "narrower" view appears to be based (at least in part) on the common misconception that Section 157's special treatment of "personal injury tort claims" was required by the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (bankruptcy jurisdiction scheme under Bankruptcy Reform Act of 1978 unconstitutional (at least in part) as inconsistent with Article III), and thus was constitutionally required. *See, e.g., In re Atron*

---

**8.** A bankruptcy debtor who is a defendant in a personal injury action may move under Section 157(b)(5) to transfer the case to one of two venues: (1) the district where the bankruptcy is proceeding; or (2) the district where the claim arose. *See* 28 U.S.C. § 157(b)(5). The transfer motion should be made to the district court in the district where the bankruptcy is proceeding. *Id.* If the transfer motion is met with a cross-motion to abstain [under 28 U.S.C. § 1334(c) ], the presumption is that "[t]ransfer should be the rule, abstention the exception."

*In re Pan Am Corp.,* 16 F.3d at 516 (second alteration in original).

*Inc. of Michigan,* 172 B.R. at 543 ("By giving the district courts jurisdiction over . . . personal injury [tort claims] . . ., Congress responded directly to the constitutional infirmities identified in *Marathon* . . . ."). This court concludes that Section 157's special treatment for "personal injury tort claims" was not constitutionally required but, rather, was a response to lobbying by the personal injury tort bar. *Accord In re Dow Corning Corp.,* 215 B.R. 346, 353–54 (Bankr.E.D.Mich.1997) ("[M]any personal injury attorneys confronted the bankruptcy process, some for the first time, in the course of *Johns–Manville* and other asbestos bankruptcy cases. Not enjoying the process, these attorneys lobbied to exempt to the extent possible, personal injury claims from adjustment in bankruptcy. Result: 28 U.S.C. § 157(b)(2)(B), (O), § 157(b)(5) and § 1411(a). Is there a constitutional dimension to these latter provisions? No.").[9] A misconception as to the reason for Section 157's special treatment of "personal injury tort claims" may affect its construction. It is one thing to construe a jurisdictional limitation (i.e., Section 157's special treatment of "personal injury tort claims") enacted by Congress in some sense on an involuntary basis because such limitation was intended merely to remedy a constitutional defect in the jurisdictional scheme. Clearly, the narrowest construction consistent with the Constitution likely would be the correct construction there. However, when the jurisdictional limitation in question was enacted by Congress as part of the normal political process and not to remedy a constitutional defect in the juris-

dictional scheme, the argument for a "narrower" construction becomes less persuasive.

On the other hand, the "broader" view may place too much reliance on whether the alleged claim would be considered a "personal injury tort" in a nonbankruptcy context. That presents at least some risk that financial, business or property tort claims also could be withdrawn from the bankruptcy system if that "broader" view is blindly followed. Given the history of Section 157's special treatment of "personal injury tort claims", that is a result that Congress cannot have intended. *See* Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 1984 U.S.C.C.A.N. (98 Stat. 333) 576, 580 (statement of Congr. Kastenmeier that "personal injury tort claim" exception was intended to cover only a "narrow range" of claims). *Cf. Horwitz v. Alloy Automotive Co.,* 992 F.2d 100, 103 (7th Cir.1993) (noting that "business torts" should not be "shoehorned" into the category of "personal injury tort claim" under Section 157(b)). Accordingly, although this court here adopts the "broader" view as the "better" view, it does not do so unconditionally. Rather, in cases where it appears that a claim might be a "personal injury tort claim" under the "broader" view but has earmarks of a financial, business or property tort claim, or a contract claim, the court reserves the right to resolve the "personal injury tort claim" issue by (among other things) a more searching analysis of the complaint.

---

9. The precise holding of *Marathon* is that a bankruptcy judge may not constitutionally enter final judgments in actions based on prepetition state-law claims brought by the bankruptcy estate against non-consenting third persons. *See id.* By way of contrast, the Supreme Court repeatedly has reaffirmed the summary/core-proceeding jurisdiction of bankruptcy judges over the process by which third-party claims *against* the estate are allowed/disallowed. *See, e.g., Langenkamp v. Culp,* 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990).

■ Here, the court concludes that the portion of the Successor Liability Claim which relates to the "Sexual Harassment" counts of the Complaint (the "Sexual Harassment Successor Liability Claim") constitutes a "personal injury tort claim" under the "broader" view.[10] That is because claims of sexual harassment in the workplace are actionable under Title VII (if actionable under Title VII at all) as unlawful employment discrimination based on sex. *See* 42 U.S.C. § 2000e–2[11]; *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) ("Without question, when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor 'discriminate[s]' on the basis of sex [in violation of Title VII]." (first alteration in original)). *See also Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 82, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) ("[W]e conclude that sex discrimination consisting of same-sex sexual harassment is actionable under Title VII ...."). As are claims of sex discrimination in the workplace, claims of race discrimination in the workplace also are claims under Section 2000e–2. Under the "broader" view, claims of race discrimination in the workplace under Section 2000e–2 are "personal

injury tort claims." *See, e.g., In re Gary Brew Enters. Ltd.,* 198 B.R. 616. Logically, claims of sex discrimination/sexual harassment in the workplace should be classified no differently. *Cf. Meritor Savings Bank, FSB v. Vinson,* 477 U.S. at 67, 106 S.Ct. 2399 ("Sexual harassment which creates a hostile or offensive environment for members of one sex is every bit the arbitrary barrier to sexual equality at the workplace that racial harassment is to racial equality." (citation and internal quotation marks omitted)).

That the Sexual Harassment Successor Liability Claim arises in an employment context gives the court some pause because the employment relationship is a contractual (and, hence, economic) one. However, Plaintiffs Stranz and Kemp allege that "Dunkirk has intentionally and with reckless indifference and disregard committed an unlawful employment practice in violation of Section 703 of Title VII, 42 U.S.C. Sec.2000e–2." (*See* Complaint, Counts I, III, V, XV and XVIII.) That allegation (if proved) qualifies Plaintiffs Stranz and Kemp (if they otherwise prevail) not only for equitable relief (*see* 42 U.S.C. § 2000e–5(g)) but for damages as well (*see* 42 U.S.C. § 1981a).[12] That fact

---

**10.** The residue of the Successor Liability Claim (i.e., the Successor Liability Claim exclusive of the Sexual Harassment Successor Liability Claim) is hereafter referred to as the "Residual Successor Liability Claim."

**11.** Section 2000e–2 provides in relevant part as follows:

(a) Employer practices
It shall be an unlawful employment practice for an employer—
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.
42 U.S.C.A. § 2000e–2 (West 2002).

**12.** Until 1991, Title VII "afforded only 'equitable' remedies ... [and t]he primary form of monetary relief available was backpay." *Landgraf v. USI Film Products,* 511 U.S. 244, 252, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). The Civil Rights Act of 1991, Pub.L. No. 102–166, § 102, 105 Stat. 1072 (1991) (the "1991 Civil Rights Act"), amended Title VII to authorize additional recovery of compensatory

sufficiently distinguishes Plaintiffs Stranz's and Kemp's portion of the Sexual Harassment Successor Liability Claim from other workplace claims which might constitute financial, business or property tort claims (or even contract claims) rather than "personal injury tort claims." *Cf. Snider v. Commercial Financial Services, Inc. (In re Commercial Financial Services, Inc.),* 252 B.R. 516, 530 (Bankr.N.D.Okla.2000) (WARN Act claim deemed not a personal injury claim in part because "[t]he exclusive remedy for violation of the WARN Act is 'back pay' and any benefits under any employee plan for a period of up to sixty days;" WARN Act claim deemed to be more like a contract claim).

Plaintiff Stokes asserts a sexual harassment claim under New York Executive Law § 296 [13] (*see* Complaint, Count XXVI) rather than under Section 2000e–2. However, a Section 296 claim is substantially identical to a sexual harassment claim under Section 2000e–2. *See Mauro v. Orville,* 259 A.D.2d 89, 697 N.Y.S.2d 704, 707 n. 3 (1999) ("Because the language of the two statutory provisions is almost identical, New York courts may rely upon title VII case law in interpreting Executive Law § 296." (citation omitted)). *See also Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 565 n. 1 (2d Cir.2000) ("Our consideration of claims brought under the state and city human rights laws parallels the analysis used in Title VII claims."). As would Section 2000e–2, applicable New York law does not limit the possible recovery of Plaintiff Stokes to equitable relief. *See* N.Y. Exec. Law § 297(4)(c) (McKinney 2002) (providing for (among other things) compensatory damages); *Rio Mar Restaurant v. New York State Division of Human Rights,* 270 A.D.2d 47, 704 N.Y.S.2d 230 (2000) (confirming State Division of Human Rights' backpay award of $65,850 plus interest and modified compensatory damages award of $125,000).[14] Moreover, as are Section 2000e–2 damage claims, Section 296 damage claims are triable to a jury. *Compare* 1991 Civil Rights Act (right to jury trial on Section 2000e–2 claims) *with O'Brien v. King World Productions, Inc.,* 669 F.Supp. 639, 642 (S.D.N.Y.1987) (right to jury trial on Section 296 claims).[15] Consequently, Plaintiff

---

and punitive damages in cases of "intentional employment discrimination" pursuant to 42 U.S.C. § 1981a. *Landgraf v. USI Film Products, supra* at 253, 114 S.Ct. 1483. The 1991 Civil Rights Act applied to "cases arising" after November 21, 1991.

13. That provision provides in pertinent part as follows:

1. It shall be an unlawful discriminatory practice:
    (a) For an employer ... because of the age, race, creed, color, national origin, sex, disability, genetic predisposition or carrier status, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

N.Y. Exec. Law § 296(1)(a) (McKinney 2002).

14. "An award of compensatory damages must be based on pecuniary loss and emotional injuries actually suffered as a result of discrimination, and care must be taken to assure that the award is not punitive." *New York State Department of Correctional Services v. State Division of Human Rights,* 241 A.D.2d 811, 661 N.Y.S.2d 85, 86 (1997). Unlike Section 2000e–2 actions, punitive damages are not recoverable in actions instituted pursuant to Executive Law § 296. *See Thoreson v. Penthouse Int'l Ltd.,* 80 N.Y.2d 490, 591 N.Y.S.2d 978, 606 N.E.2d 1369 (1992). The court does not deem any inability of Plaintiff Stokes to recover punitive damages under Executive Law § 296 to be a material difference from her rights under Section 2000e–2 for the purposes of this analysis.

15. It is unclear from the record whether Plaintiffs have asserted a right to trial by jury with respect to the counts of the Complaint

Stokes' claim for "[s]exual [h]arassment" likewise is a "personal injury tort claim." [16] Accordingly, the court concludes that at least the Sexual Harassment Successor Liability Claim is a "personal injury tort claim" within the purview of Section 157(b).[17]

## C. *Bankruptcy Court Jurisdiction in Respect of Allowance/Liquidation of "Personal Injury Tort Claims"*

Section 157 also has produced disagreement among the courts as to the extent (if any) of the jurisdiction of the bankruptcy court over adjudication for distribution purposes of the *existence or nonexistence* (as opposed to the amount) of the debtor's liability on a "personal injury tort claim." Some courts appear to hold that Section 157(b)(5) (which among other things, precludes the bankruptcy court from "tr[ying]" the "personal injury tort claim") leaves the bankruptcy court with *no* jurisdiction over adjudication of at least certain objections to a "personal injury tort claim." *See, e.g., In re Schepps Food Stores, Inc.,* 169 B.R. 374 (Bankr.S.D.Tex. 1994) (holding that court lacked jurisdiction to decide the pending summary judgment motion on an objection to claim alleging statute of limitation defenses because adjudication of the motion would result in a *"de facto"* trial of the underlying state court action (and hence the "liquidation" of the claim) in contravention of Section 157(b)). Other courts, reasoning that (1) summary judgment on the issue of the debtor's liability on a "personal injury tort claim" is a core proceeding and (2) Section 157(b)(5) does not preclude *pre-trial* proceedings (including rendering summary judgment in the debtor's favor) in the bankruptcy court, hold that a bankruptcy court may enter a final summary judgment in the debtor's favor on the issue of the debtor's *liability* on a "personal injury tort claim." *See, e.g., In re Dow Corning Corp.,* 215 B.R. 346. *Cf. United States Lines, Inc. v. United States Lines Reorganization Trust (In re U.S. Lines, Inc.),* 262 B.R. 223, 234–35 (S.D.N.Y.2001) ("[A] bankruptcy court may disallow a personal injury claim based on that court's determination that the claim, if litigated, would not be viable in light of the estate's available defenses.").

Here it is not necessary for this court to determine whether it has *any* jurisdiction under Section 157(b)(5) over that portion of the Claim Objection dealing with the Sexual Harassment Successor Liability Claim, or whether such jurisdiction would be core or non-core under Section 157(b)(2). That is because (as will be more apparent from the discussion below) Plaintiffs' arguments for relief from stay and abstention only grow stronger as this court's jurisdiction in respect of the Sexual Harassment Successor Liability Claim is diminished. Accordingly, for the purposes of this memorandum only, this court will assume that it has jurisdiction to enter summary judgment as a final order in the Debtor's favor in respect of the entire Claim Objection. As will be apparent from the discussion below, the key consid-

---

alleged pursuant to the New York Executive Law.

**16.** The foregoing discussion also applies to Plaintiffs Stranz's and Kemp's corresponding claims under Section 296 of the New York Executive Law. (*See* Complaint, Counts II, IV, VI, XVI, XIX).

**17.** Because (as explained more fully below) the disposition of these matters in respect of the Residual Successor Liability Claim necessarily follows the disposition in respect of the Sexual Harassment Successor Liability Claim, it is unnecessary for the court now to determine whether the Residual Successor Liability Claim also constitutes a "personal injury tort claim."

eration here is that this court has *no* jurisdiction to "try" that portion of the Claim Objection which relates to the Sexual Harassment Successor Liability Claim. *Cf.* 28 U.S.C. § 157(b)(5).

D. *Relief From Stay (Sexual Harassment Successor Liability Claim)*

■ Bankruptcy Code § 362(d)(1) provides in relevant part:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause . . . .

11 U.S.C.A. § 362(d)(1) (West 2002). "The party opposing stay relief has the ultimate burden of disproving the existence of 'cause', *see* 11 U.S.C. § 362(g)(2), but the movant has the initial burden to show that 'cause' exists." *In re New York Medical Group, P.C.*, 265 B.R. 408, 413. *See also Sonnax Industries, Inc. v. Tri Component Products Corp. (In re Sonnax Industries, Inc.)*, 907 F.2d 1280, 1285 (2d Cir.1990) (noting that the burden of proof under Section 362(d)(1) is "a shifting one"). However, the movant's failure to establish "cause" will result in a denial of the motion without requiring the debtor to prove its entitlement to the "continued protection" of the automatic stay. *In re Sonnax Industries, Inc., supra* at 1285.

■ In determining the existence of "cause" to modify the stay to permit the continuation of litigation in another forum, the court must weigh the following factors: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary

expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*Id.* at 1286. "Not all factors necessarily are involved in a given case, and the decision is within the discretion of the bankruptcy court . . . ." *Gelinas v. Gelinas (In re Gelinas)*, 270 B.R. 88, 91 (Bankr. D.Conn.2001) (Krechevsky, B.J.). *See also Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir.1999). Of the foregoing factors, factors 1, 2, 7, 10, 11, and 12 appear to be relevant here. In this case, the *Sonnax* factors must be considered in light of this court's determination that it may not conduct a "trial" in respect of that portion of the Claim Objection which relates to the Sexual Harassment Successor Liability Claim.

■ In the Stay Motion Objection, the Debtor primarily argues that several of the *Sonnax* factors weigh against modifying the automatic stay because litigation would be duplicated in the New York District Court and this court resulting in increased expenses to the estate (in the form of administrative claim expenses) and unnecessary delays to the detriment of creditors. For the reasons that follow, the court concludes that relief from stay is

appropriate to permit both pre-trial proceedings and trial in respect of the Sexual Harassment Successor Liability Claim to go forward in the New York District Court (subject to the Debtor's right to seek transfer pursuant to a motion (a "Section 157(b)(5) Motion") under Section 157(b)(5)).

### a. *Whether Relief Would Result in a Partial or Complete Resolution of the Issues (First "Sonnax Factor")*

As noted above, the court cannot in any event "try" the liability issue with respect to the Sexual Harassment Successor Liability Claim. Consequently, the Debtor's arguments concerning duplicate litigation concerning estimation for voting purposes and claims reserve purposes are no longer relevant because any such "duplication" would be required by Section 157(b)(5) and not caused by any relief from stay. *See* 11 U.S.C. § 157(b)(5).[18] On the other hand, the New York District Court can "try" the claim. Moreover, the New York District Court can adjudicate the Cross–Motions. A grant of summary judgment in the Debtor's favor on the Cross–Motions by the New York District Court would completely resolve the issue from the Debtor's point of view and the Debtor could exit the case leaving the other parties to any trial on the merits.

### b. *Whether There is Any Connection with or Interference with the Bankruptcy Case (Second "Sonnax Factor")*

The Sexual Harassment Successor Liability Claim could be the largest claim in this case. If the claim cannot be liqui-

dated prior to plan confirmation (a likely scenario if "trial" on the claim is required), the Debtor may have to hold back some distributions from creditors in order to fund an appropriate distribution reserve for that claim. That would be at least some interference with this case. However, any such interference would not be not caused by any relief from stay that this court may grant but, rather, by the application of Section 157(b)(5).

### c. *Whether Litigation in Another Forum Would Prejudice the Interests of Other Creditors (Seventh "Sonnax Factor")*

The court is not persuaded that granting stay relief would unduly prejudice the interests of other creditors in this bankruptcy case. That is so because any prejudice to other creditors caused by a trial on the merits in a court other than this court would be caused by the dictates of Section 157(b)(5) rather than by any stay relief granted here. As discussed below, other creditors and the estate do not have a sufficient legitimate interest in prosecuting/defending pre-trial proceedings in this court as opposed to the New York District Court.

### d. *The Interests of Judicial Economy and the Expeditious and Economical Resolution of Litigation (Tenth "Sonnax Factor")*

The Litigation has been pending before the New York District Court for almost five years and the Cross–Motions were filed in June, 2001. Furthermore, the parties have fully briefed the Cross–Motions and only oral arguments (and a resolution of the Motion To Strike) remain for sub-

---

**18.** Any determination that this court must make with respect to the allowance of a judgment claim resulting from the Litigation (such as the allowance of any punitive damages

included in the judgment) would not constitute duplicate litigation because such a determination must be made by this court in the first instance. *See* 28 U.S.C. § 157(b)(2)(B).

mission of the Cross–Motions to the New York District Court. The New York District Court is therefore presumed to be considerably more advanced on the "learning curve" with respect to the merits of this matter than is this court. Moreover, the Cross–Motions may resolve the Litigation in its entirety with respect to the Debtor which would also limit the Debtor's litigation expenses. Finally, the New York forum would not be significantly more expensive for the estate than here and any additional expense to the estate does not outweigh the other considerations set forth above.

e. *Whether the Parties Are Ready for Trial in the Other Proceeding (Eleventh "Sonnax Factor")*

Discovery is complete in the Litigation and the Cross–Motions are ready for oral argument before the New York District Court. On the other hand, no motion for summary judgment is currently pending before this court.

f. *Impact of the Stay on the Parties and the Balance of Harms (Twelfth "Sonnax Factor")*

At best this court's jurisdiction over that portion of the Claim Objection which relates to the Sexual Harassment Successor Liability Claim is limited to pre-trial proceedings in respect of that claim. *Cf.* 28 U.S.C. § 157(b)(5). If the stay of pre-trial

proceedings in the New York District Court remains in effect, the Plaintiffs will have to bear the cost and delay inherent in duplicating those proceedings here.[19] On the other hand, granting stay relief with respect to pre-trial proceedings will impose no legally cognizable harm upon the estate except (perhaps) for some additional travel expense. Any further harm caused to the Debtor as a result of a trial in respect of the Sexual Harassment Successor Liability Claim before the New York District Court would be a result of Section 157(b)(5) and not any relief granted by this court. Accordingly, the balance of harms tips in the Plaintiffs' favor.

E. *Abstention (Sexual Harassment Successor Liability Claim)* [20]

Discretionary (or permissive) abstention is permitted pursuant to Section 1334(c)(1) which provides: "Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C.A. § 1334(c)(1) (West 2002). A decision to exercise discretionary abstention is within the "sound discretion" of the bankruptcy court, *AHT Corp. v. Bioshield Technologies, Inc. (In re AHT Corp.)*, 265 B.R. 379, 383 (Bankr.S.D.N.Y. 2001), and the court properly may determine its applicability in a core or non-core

---

**19.** The Debtor has refused to agree that this court decide the Cross–Motions on the submissions made by the parties in the New York District Court. However, even if that agreement had been reached, this court still would be at a disadvantage *vis a vis* the New York District Court with respect to the "learning curve."

**20.** The Plaintiffs initially sought abstention pursuant to Bankruptcy Code § 305. However, reliance on that provision is misplaced because any "dismissal" or "suspension" un-

der that provision would relate to "*all* proceedings in a case under [title 11] ...," 11 U.S.C.A. § 305(a) (West 2002) (emphasis added), and not just to portions of the bankruptcy case. *See, e.g., Zack v. United States*, 224 B.R. 601, 605 (E.D.Mich.1998) (holding that Section 305 is inapplicable to support the court's abstention solely from an adversary proceeding). Abstention under Section 1334(c) was addressed by the Debtor in its brief and by both sides at oral argument.

proceeding. *Indiana Lumbermens Mutual Ins. Co. v. Rusty Jones, Inc. (In re Rusty Jones, Inc.)*, 124 B.R. 774, 779 (Bankr.N.D.Ill.1991).[21]

The court concludes that because it lacks jurisdiction pursuant to Section 157(b)(5) to "try" that portion of the Claim Objection which relates to the Sexual Harassment Successor Liability Claim, a determination of discretionary abstention as to "trial" is both unnecessary and inappropriate. However, for substantially the same reasons that stay relief is granted (i.e., in the interests of judicial economy, the avoidance of unnecessary expense and delay to the Plaintiffs and lack of prejudice to the estate), to the extent that this court does have jurisdiction over such proceedings, this court will abstain from relevant proceedings in respect of the Sexual Harassment Successor Liability Claim.

### F. Relief from Stay (Residual Successor Liability Claim)

Applying the *Sonnax* factors, the court conclude that sufficient "cause" also exists to grant relief with respect to the Residual Successor Liability Claim. As stated, discovery is complete and the matter is ready for disposition before the New York District Court which is far more advanced than is this court on the "learning curve" with respect to the merits of the claims at issue here. Given this court's determination that relevant proceedings in respect of that portion of the Claim Objection which relates to the Sexual Harassment Successor Liability Claim will not take place in this court, even if the Residual Successor Liability Claim is not a "personal injury tort claim" and relevant proceedings in respect of it could be conducted before this court, no substantial benefit to the estate would result from such a limited and piecemeal adjudication of the Claim Objection. On the other hand, if stay relief is granted, the Litigation will proceed as one unit (subject to an order of the Connecticut District Court pursuant to Section 157(b)(5)). Accordingly, relief from stay will be granted to permit both pre-trial proceedings in respect of the Residual Successor Liability Claim and "trial" on such claim to go forward in the New York District Court (subject to the Debtor's right to file a Section 157(b)(5) Motion).[22]

---

**21.** Courts have balanced the following non-exclusive factors when deciding if abstention is appropriate:
(1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.
*In re Pacific Gas & Electric Co.*, 279 B.R. 561, 569–70 (Bankr.N.D.Cal.2002) (alteration in original). Although the foregoing factors are not specifically discussed in this memorandum, the court has taken those factors into account.

**22.** If the Debtor elects to file a Section 157(b)(5) Motion in respect of the Residual Successor Liability Claim, the issue of whether or not the Residual Successor Liability Claim is a "personal injury tort claim" will be submitted to the Connecticut District Court. At that time, in its discretion, the Connecticut District Court can re-refer the issue to this court for adjudication. Because of the disposi-

### G. Abstention (Residual Successor Liability Claim)

In order to avoid piecemeal litigation, this court, to the extent that it has jurisdiction under Section 157(b)(5) over that portion of the Claim Objection which relates to the Residual Successor Liability Claim, will abstain from both pre-trial proceedings and trial in respect of such claim.

### H. Jury Trial Issues

As noted above, the Plaintiffs have asserted a right to trial by jury in this case in respect of the Claim Objection and the Debtor has objected to that demand.[23] Because this court has concluded that it will not entertain relevant proceedings in respect of the Successor Liability Claim, it would be inappropriate for this court to rule on the jury demand and the motion to strike the same. Accordingly, this court abstains from any adjudication in respect of such matters.

### III. CONCLUSION

For the reasons set forth above, an order will enter providing as follows:

(a) the Lift Stay Motion and the request for abstention set forth in the Jury Demand and Abstention Request are each granted to the extent discussed above;

(b) the Stay Motion Objection and the abstention objection set forth in the Jury Demand and Abstention Objection are each overruled to the extent discussed above;

(c) the automatic stay in this case is modified to the extent necessary to permit the Plaintiffs and the Debtor to take all actions necessary or appropriate to prosecute or defend (as the case may be) the Litigation in the New York District Court; *provided, however,* the Plaintiffs shall take no action to enforce against the Debtor any judgment obtained in the Litigation other than to assert such judgment as a claim in this case;

(d) to the extent that this court has jurisdiction in respect of the same under 28 U.S.C. § 157(b)(5), this court abstains from adjudication of the Claim Objection for distribution purposes; *provided, however,* this court retains the right to adjudicate the allowance/disallowance for distribution purposes of any judgment claim obtained by the Plaintiffs in respect of the Successor Liability Claim and/or to adjudicate the allowance/disallowance for distribution purposes of such claim in a manner consistent with any judgment obtained by the Debtor in respect of such claim;

(e) to the extent that this court has jurisdiction in respect of the same under 28 U.S.C. § 157(b)(5), this court abstains from adjudicating the motion to strike jury trial demand set forth in the Jury Demand and Abstention Objection; and

(f) nothing in this order shall prejudice or otherwise impair any right of the Debtor to seek to transfer all or any part of the Litigation pursuant to a Section 157(b)(5) Motion filed with the Connecticut District Court.

### SCHEDULE A

With regard to Plaintiff Beth Stranz:

- Count I against defendant Dunkirk alleges a claim for "Sexual Harass-

---

tion contemplated above, the issue will not be ripe until then and this court declines to decide it now.

23. The Debtor also argues that, if the Plaintiffs would not be entitled to trial by jury in respect of the Successor Liability Claim in this case, then they also would be lacking that right in the Litigation.

ment—Hostile Work Environment—Title VII [42 U.S.C. § 2000e–2][1];"

- Count II against defendant Dunkirk alleges a claim for "Sexual Harassment—Hostile Work Environment—Human Rights Law [Section 296(1) of the New York Executive Law];"

- Count III against defendant Dunkirk alleges a claim for "Sexual Harassment—Hostile Work Environment—Title VII [42 U.S.C. § 2000e–2];"

- Count IV against defendant Dunkirk alleges a claim for "Sexual Harassment—Hostile Work Environment—Human Rights Law [Section 296(1) of the New York Executive Law];"

- Count V against defendant Dunkirk alleges a claim for "Sexual Harassment—Quid Pro Quo—Title VII [42 U.S.C. § 2000e–2];"[2]

- Count VI against defendant Dunkirk alleges a claim for "Sexual Harassment—Quid Pro Quo—Human Rights Law [Section 296(1) of the New York Executive Law];"

- Count VIII against defendant Dunkirk alleges a claim under the "Equal Pay Act [29 U.S.C. § 206];"

- Count IX against defendant Dunkirk alleges a claim for "Gender Discrimination—Wage [D]ifferential—Title VII [42 U.S.C. § 2000e–2];"

- Count X against defendant Dunkirk alleges a claim for "Gender Discrimination—Discharge—Title VII [42 U.S.C. § 2000e–2];"

- Count XI against defendant Dunkirk alleges a claim for "Gender Discrimination—Discharge—Human Rights Law [Section 296(1) of the New York Executive Law];"

- Count XIII against defendant Dunkirk alleges a claim for "Retaliatory Discharge—Protected Activity—Title VII [42 U.S.C. § 2000e–3];" and

- Count XIV against defendant Dunkirk alleges a claim for "Retaliatory Discharge—Protected Activity—Human Rights Law [Section 296(7) of the New York Executive Law]."

With regard to Plaintiff Corrinne Kemp:

- Count XV against defendant Dunkirk alleges a claim for "Sexual Harassment—Hostile Work Environment—Title VII [42 U.S.C. § 2000e–2];"

- Count XVI against defendant Dunkirk alleges a claim for "Sexual Harassment—Hostile Work Environment—Human Rights Law [Section 296(1) of the New York Executive Law];"

- Count XVIII against defendant Dunkirk alleges a claim for "Sexual Harassment—Quid Pro Quo—Title VII [42 U.S.C. § 2000e–2];"

- Count XIX against defendant Dunkirk alleges a claim for "Sexual Harassment—Quid Pro Quo—Human Rights Law [Section 296(1) of the New York Executive Law];"

- Count XXI against defendant Dunkirk alleges a claim for "Gender Discrimination—Discharge—Title VII [42 U.S.C. § 2000e–2];"

---

1. Quoted material is taken from Complaint captions identifying the relevant counts. This court expresses no opinion as to the merits of the allegations of the Complaint summarized herein.

2. Title VII "quid pro quo" claims are claims that the plaintiff was asked or required to submit to sexual demands as a condition to obtain employment or to maintain employment or to obtain promotions. *See Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (distinguishing Title VII "quid pro quo" claims from Title VII "hostile work environment" claims).

- Count XXII against defendant Dunkirk alleges a claim for "Gender Discrimination—Discharge—Human Rights Law [Section 296(1) of the New York Executive Law];"
- Count XXIV against defendant Dunkirk alleges a claim for "Age Discrimination—Discharge—ADEA [29 U.S.C. § 623];" and
- Count XXV against defendant Dunkirk alleges a claim for "Age Discrimination—Discharge—Human Rights Law [Section 296(1) of the New York Executive Law]."

With regard to Plaintiff Elizabeth Stokes:

- Count XXVI against defendant Dunkirk alleges a claim for "Sexual Harassment—Hostile Work Environment—Human Rights Law [Section 296(1) of the New York Executive Law];"
- Count XXVIII against defendant Dunkirk alleges a claim for "Gender Discrimination—Discharge—Human Rights Law [Section 296(1) of the New York Executive Law];"
- Count XXX against defendant Dunkirk alleges a claim under the "Equal Pay Act [29 U.S.C. § 206];"
- Count XXXI against defendant Dunkirk alleges a claim for "Wage Differential—New York Labor Law [Section 194 of the New York Labor Law];" and
- Count XXXII against defendant Dunkirk alleges a claim for "Violations of the Family Medical Leave Act [29 U.S.C. § 2615]."