FILED

NOT FOR PUBLICATION

APR 11 2013

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

## UNITED STATES BANKRUPTCY APPELLATE PANEL

### OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   CC-12-1513-KiPaTa |
| CATHERINE Z. CASS, | Bk. No.   12-16090-RK |
| Debtor. | Adv. No.  12-1235-RK |
| CHARLES W. DAFF, Chapter 7 Trustee, | |
| Appellant, | |
| v. | **M E M O R A N D U M**[1] |
| JAMES WALLACE; REBECCA WALLACE; GLORIA SUESS, | |
| Appellees. | |

Argued and Submitted on March 22, 2013,
at Pasadena, California

Filed - April 11, 2013

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Robert N. Kwan, Bankruptcy Judge, Presiding

Appearances:  Ed Hays, Esq. of Marshack Hays LLP argued for appellant, Charles W. Daff, Chapter 7 Trustee; David B. Dimitruk, Esq. of the Law Offices of David B. Dimitruk argued for appellees, James and Rebecca Wallace and Gloria Suess.

Before: KIRSCHER, PAPPAS and TAYLOR, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Appellant, chapter 7[2] trustee Charles W. Daff ("Trustee"), appeals a judgment from the bankruptcy court determining that the recorded abstract of judgment of appellees, James and Rebecca Wallace ("Wallaces") and Gloria Suess ("Suess")(collectively the "Judgment Creditors") attached to proceeds from the sale of debtor's residence even though it was recorded after the debtor had fraudulently transferred her interest in the residence to her daughter. The bankruptcy court published its decision. See Daff v. Wallace (In re Cass), 476 B.R. 602 (Bankr. C.D. Cal. 2012). We AFFIRM on the narrow basis that the debtor, despite the transfer, held an equitable interest in the Residence to which the Judgment Creditors' judgment lien attached. As a result, the sale proceeds are subject to the Judgment Creditors' claim. We express no opinion concerning the bankruptcy court's determination that under California law a transfer of property in fraud of creditors is "void ab initio" rather than merely "voidable."

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A. The defamation lawsuit, the fraudulent transfer, the first bankruptcy case, the state court judgment and appeal, and the abstract of judgment**

The facts of this case are undisputed. The Judgment Creditors are former next door neighbors of the deceased chapter 7 debtor, Catherine Z. Cass ("Cass"). After many years of Cass's daily harassment of her neighbors by posting of defamatory signs about them in her front yard, directing loud music at their homes, making other loud noises to disturb them throughout the night,

---

[2] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

operating yard machines while they tried to enjoy their backyards, and leading her dogs to defecate on the Wallaces' front yard without picking up after them, Suess and the Wallaces sued Cass in state court for defamation and nuisance on April 22, 2004 ("Defamation Lawsuit"). At that time, Cass owned her residence located in Santa Ana, California ("Residence").

One day after filing her answer, Cass executed and recorded a grant deed purporting to transfer title of the Residence to her daughter, Christine Zeman ("Zeman"), and reserving a life estate for herself. Zeman provided no consideration for the transfer. Concurrent with the transfer, Zeman signed a letter agreement wherein she promised to "transfer the [Residence] back to [Cass] upon her request."

The trial in the Defamation Lawsuit was scheduled to begin on May 9, 2005, but was stayed once Cass filed a chapter 13 bankruptcy case on May 6, 2005. On July 5, 2007, the bankruptcy court dismissed Cass's chapter 13 case as a bad faith filing and enjoined her from filing any further bankruptcy petitions for 180 days.

After trial of the Defamation Lawsuit, on September 15, 2005, the state court announced its oral ruling against Cass. On October 28, 2005, the state court entered a judgment in favor of the Judgment Creditors on their nuisance and defamation claims for $320,000, which included an award of $75,000 for punitive damages and injunctive relief ("State Court Judgment"). Pursuant to the State Court Judgment, the court determined:

> Among other things, the punitive and exemplary damages are determined by the court to be appropriate based upon (1) the defendant's malicious and oppressive conduct

toward the plaintiffs, which conduct the court finds was established by clear and convincing evidence, (2) the net equity of the residence located at 2420 N. Fairmont Ave., Santa Ana, California 92706, which is <u>effectively owned</u> by Catherine Cass despite the purported transfer of title to her daughter Christine Zeman without consideration and agreements to support the transfer and which the court took into consideration in determining the amount of punitive and exemplary damages, and (3) the transfer of title to the residence was to avoid the possibility of a judgment that might affect her ability to hold on to the residence (emphasis added).

The Judgment Creditors recorded an abstract of the State Court Judgment ("Abstract") in Orange County, California on November 1, 2005.

Cass appealed the State Court Judgment. The California Court of Appeals affirmed the damages award but struck some of the injunctive provisions as unconstitutionally broad.

**B.    The fraudulent transfer lawsuit, the second bankruptcy case, removal of the fraudulent transfer lawsuit and the avoidance judgment**

Immediately after the bankruptcy court dismissed Cass's chapter 13 bankruptcy case and, while the Defamation Lawsuit and appeal were pending, the Judgment Creditors filed another suit against Cass and Zeman in state court on July 8, 2005, seeking to avoid and set aside as fraudulent Cass's transfer of the Residence to Zeman ("Fraudulent Transfer Lawsuit") under CAL. CIV. CODE ("CCC") § 3439 et seq., the California Uniform Fraudulent Transfer Act ("CUFTA"). The Judgment Creditors asserted that, despite the transfer, Cass had retained exclusive use, possession and control of the Residence within the meaning of CCC § 3439.04(b)(2). The Residence, which was Cass's only asset, was believed to be worth $500,000 at the time of the transfer. The Judgment Creditors prayed for multiple remedies under California law, including an

-4-

order avoiding and setting aside the transfer and restoring title of the Residence to Cass, an attachment against the Residence or its proceeds, injunctive relief and the appointment of a receiver.[3]

The trial in the Fraudulent Transfer Lawsuit was scheduled to begin on January 8, 2007, but was stayed once Cass filed a chapter 7 bankruptcy case on January 5, 2007. Shortly thereafter, Trustee filed a Notice of Substitution of Bankruptcy Trustee as Plaintiff and Real Party in Interest in the state court and removed the Fraudulent Transfer Lawsuit to the bankruptcy court (now the "Fraudulent Transfer Adversary"). All activity in the Fraudulent Transfer Adversary was initially suspended while Cass pursued her appeal of the State Court Judgment.

At a status conference on May 27, 2008, Trustee announced that he, Zeman and the Judgment Creditors had negotiated a stipulation to undo the transfer of the Residence and restore title to Trustee and to dismiss Zeman from the Fraudulent Transfer Adversary. Cass opposed the stipulation. The bankruptcy court noted that because Cass was not a party to it, she could still pursue her appellate rights respecting the State Court Judgment with the California Supreme Court.

The Stipulation for Entry of Judgment Avoiding and Recovering Transfer of Real Property ("Stipulation") and separate judgment ("Avoidance Judgment") were filed on May 29, 2008. The Avoidance Judgment avoided and set aside the transfer of the Residence under

---

[3] Zeman apparently filed a cross-complaint in the Fraudulent Transfer Lawsuit, but we do not have a copy of it in the record, and it is not clear as to what claims she asserted.

-5-

CCC §§ 3439.04[4] and 3439.07,[5] recovered it for the benefit of the estate under § 550, and dismissed Zeman's cross-complaint and the Zeman Adversary[6] with prejudice. All claims against Zeman were now resolved and dismissed with prejudice.

---

[4] CCC § 3439.04(a)(1), which is the relevant section here, provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:
> (1) With actual intent to hinder, delay, or defraud any creditor of the debtor.

[5] CCC § 3439.07, which sets forth a creditor's remedies, provides in relevant part:

> (a) In an action for relief against a transfer or obligation under this chapter, a creditor, subject to the limitations in Section 3439.08, may obtain:
> (1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim.
> (2) An attachment or other provisional remedy against the asset transferred or its proceeds . . .
> (3) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure, the following:
> (A) An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or its proceeds.
> (B) Appointment of a receiver to take charge of the asset transferred or its proceeds.
> (C) Any other relief the circumstances may require.
>
> (b) If a creditor has commenced an action on a claim against the debtor, the creditor may attach the asset transferred or its proceeds if the remedy of attachment is available in the action under applicable law and the property is subject to attachment in the hands of the transferee under applicable law.
>
> (c) If a creditor has obtained a judgment on a claim against the debtor, the creditor may levy execution on the asset transferred or its proceeds.

[6] In the Zeman Adversary (07-1094), the Judgment Creditors alleged claims to deny Cass's discharge and sought a determination that their lien rights in the Residence were superior to Zeman's.

-6-

Cass appealed the Stipulation and Avoidance Judgment to the Panel. She alternatively requested that the bankruptcy court reconsider its approval of the Stipulation and Avoidance Judgment. The bankruptcy court denied Cass's request to reconsider.

On June 11, 2008, the California Supreme Court denied Cass's petition for review of the appellate court's decision affirming the damages awarded in the State Court Judgment. The State Court Judgment was therefore final.

Cass died on February 7, 2009. On June 11, 2009, the Panel dismissed her appeal of the Stipulation and Avoidance Judgment for lack of prosecution.

**C.    Trustee's adversary proceeding against the Judgment Creditors**

    **1.    Pretrial events**

        **a.    Trustee's complaint, the Judgment Creditors' counterclaims, the homestead exemption order and the sale of the Residence**

On January 27, 2010, Trustee filed a complaint against the Judgment Creditors seeking a declaratory judgment that the Abstract never attached to the Residence ("Declaratory Relief Adversary").[7] Specifically, Trustee contended that the Judgment Creditors had no judgment lien on the Residence, because Cass had transferred title to it to Zeman before they recorded the Abstract, and any lien against Cass's life estate had terminated upon her death.[8]

_____

[7] The Declaratory Relief Adversary was initially filed in Santa Ana and assigned case no. 10-1058. When it was transferred to the Los Angeles Division, it was renumbered 12-1235.

[8] Trustee had also asserted a claim under § 549, seeking to avoid, recover and preserve any lien that arose postpetition in

(continued...)

-7-

The Judgment Creditors filed an answer and counterclaim seeking declaratory relief and injunction against Trustee. Specifically, the Judgment Creditors sought a determination that (a) Trustee had to apply the sale proceeds of the Residence to satisfy their claims against Cass, (b) the Abstract was superior to all claims of interest in the Residence and (c) Cass's transfer to Zeman was a fraudulent transfer that nullified and voided that transfer, including the life estate.

On May 6, 2010, the bankruptcy court entered an order on Trustee's objection to Cass's claimed homestead exemption ("Homestead Exemption Order"):

> IT IS HEREBY ORDERED that the Debtor's disputed claim of exemption in her life estate is rendered moot by her death. Upon the Debtor's death, the life estate terminated and no longer constituted property of bankruptcy estate which could be administered by the Trustee for the benefit of creditors. If and when the Trustee sells the Estate's rights in the real property commonly known as 2420 N. Fairmont Avenue, Santa Ana, California that were established pursuant to [the Avoidance Judgment] entered as Docket No. 155 on May 29, 2008, no portion of the proceeds of sale shall constitute proceeds of the sale of the Debtor's interest in her life estate.

On June 1, 2010, the bankruptcy court entered an order authorizing Trustee to sell the Residence free and clear of all liens, claims and interests for $321,000, with the caveat that the Judgment Creditors' disputed lien attached to the sale proceeds pending resolution of the Declaratory Relief Adversary.

---

[8](...continued)
favor of the Judgment Creditors upon entry of the Avoidance Judgment. Trustee later dropped this claim at trial after the Judgment Creditors conceded they never contended their judgment lien arose under such a theory. Therefore, we do not further discuss the § 549 claim.

Ultimately, Trustee received $292,730.95 in proceeds. After payment of interim compensation and reimbursement of costs for Trustee and his professionals in the amount of $92,371.66, Trustee held the balance of $193,459.29 in net sale proceeds.

### b. The cross-motions for summary judgment, the order denying summary judgment and the appeal of that order

Trustee and the Judgment Creditors filed cross-motions for summary judgment in September 2010. The bankruptcy court denied the cross-motions, determining that certain genuine issues of material fact existed for trial. First, as to the parties' conflicting argument whether in California a fraudulent transfer is "voidable" or "void ab initio," the court observed that neither party had cited a California case holding one way or the other under the CUFTA, and the court had not located any such case. The court further determined that a genuine issue of material fact existed as to Cass's retention of control over the Residence after the transfer of the remainder interest to Zeman within the meaning of the CUFTA and the common law, which needed to be resolved at trial. Finally, the parties needed to address at trial the conflict between CAL. CODE CIV. P. ("CCP") § 697.340(a),[9] which contains an exception for property transfers before judgment is obtained, and case law holding that fraudulent transfers are void.

---

[9] CCP § 697.340(a) provides:

A judgment lien on real property attaches to <u>all</u> interests in real property in the county where the lien is created (whether present or future, vested or contingent, legal or <u>equitable</u>) that are subject to enforcement of the money judgment against the judgment debtor . . . at the time the lien was created, <u>but does not reach</u> . . . <u>real property</u> that is subject to an attachment lien in favor of the creditor and <u>was transferred before judgment</u> (emphasis added).

-9-

The parties timely filed cross-appeals of the interlocutory summary judgment order and motions for leave. On June 15, 2011, the Panel issued an order denying leave and dismissing the cross-appeals due to the parties' inability to establish the factors necessary to obtain leave to appeal.

**2. The trial, the memorandum decision and the judgment in favor of the Judgment Creditors**

In their filed Joint Pretrial Order ("Joint PTO") and Joint Compendium of Exhibits in support, the parties contended that no issues of material fact were in dispute and that the matter could be decided without any witness testimony. The bankruptcy court approved the Joint PTO on November 8, 2011.

On December 19, 2011, Trustee and the Judgment Creditors filed a second stipulation in the Fraudulent Transfer Adversary (the "December 19 Stipulation"), dismissing all remaining claims between the parties not previously dismissed without prejudice so that those claims could be adjudicated in the Declaratory Relief Adversary. Under the December 19 Stipulation, the parties agreed that dismissal of the Fraudulent Transfer Adversary would "not give rise to any adverse legal or other effect on any party or issue to be determined in [the Declaratory Relief Adversary]". The bankruptcy court entered an order on December 20, 2011, approving the December 19 Stipulation (the "December 20 Order").

Both parties submitted opening trial briefs, responses and replies in support. In short, Trustee contended that under CCP § 697.340(a) an abstract of judgment has no affect on previously transferred property. Because the Judgment Creditors recorded their Abstract after Cass transferred her remainder interest in

-10-

the Residence to Zeman, the Abstract attached only to Cass's life estate, which lapsed upon her death and extinguished any existing liens. He further argued that the state court had not determined Cass had an interest in the Residence at the time the Abstract was recorded. As a result, argued Trustee, the Judgment Creditors had no secured claim against the remainder interest in the Residence.

The crux of Trustee's argument was that in California fraudulent transfers are voidable, not void ab initio, because the CUFTA superceded the common law that fraudulent transfers are void with a specific provision that such transfers are subject only to "avoidance." Therefore, contrary to the Judgment Creditors' position, the fraudulent transfer of Cass's remainder interest was not automatically void at the moment it occurred, which is the only way the Abstract could have attached and provided the Judgment Creditors with a secured judgment lien. In fact, argued Trustee, the bankruptcy court's prior ruling in the Homestead Exemption Order implicitly found that the transfer was not void, based on its finding that Cass's only interest in the Residence as of the petition date was a life estate; if the transfer had been void, the court would have found that Cass still held a remainder interest in the Residence despite the transfer to Zeman. Thus, it was law of the case that the transfer was "avoided" and never adjudicated to be "void."

Alternatively, Trustee argued that even if the transfer could be declared "void," only he had standing to seek such a determination. According to Trustee, because the Avoidance Judgment avoided, recovered and preserved the transfer of the remainder interest in the Residence and vested title in Trustee

-11-

for the benefit of the estate, the Judgment Creditors lost their right to launch a further attack to establish the transfer was void ab initio and obtain a claim superior to the estate. In addition, claim preclusion further barred the Judgment Creditors from asserting that the transfer was void because the Avoidance Judgment conclusively determined it was "avoidable."

The Judgment Creditors essentially argued that their Abstract attached to the Residence when it was filed on November 1, 2005, in one of two ways: (1) Cass was the owner or the equitable owner of the Residence when the Abstract was recorded, so it attached pursuant to CCP § 697.340(a); or (2) because Cass was guilty of a fraudulent transfer, such transfer was "void" and could be disregarded by creditors, so the Abstract attached to the Residence and then to the proceeds, and Trustee's subsequent acquisition of bare title could not defeat the prior recorded Abstract.

Specifically, the Judgment Creditors asserted that their Abstract attached to the Residence even though Cass had previously transferred title to it to Zeman because CCP § 697.340(a) dictated that their judgment lien, which they perfected by recording the Abstract, attached immediately to the Residence and subjected it to the satisfaction of the State Court Judgment. Therefore, the question was whether Cass had any interest in the Residence when the Abstract was recorded. The Judgment Creditors argued that the record, particularly the findings by the state court, established her ownership at that time.

The Judgment Creditors alternatively argued that the Abstract attached to the fee interest Cass attempted to fraudulently

-12-

transfer to Zeman because the transfer was void and as though it never occurred. They argued that, contrary to Trustee's position, the CUFTA, particularly CCC § 3439.07(a)(1) and its use of the terms "avoidance" and "avoid," did not displace or expressly supercede the long-established law in California that fraudulent transfers are considered "void." As a result, argued the Judgment Creditors, title and ownership to the Residence remained in Cass, the fraudulent grantor, and Trustee's subsequent acquisition of bare legal title from Zeman (who admitted the transfer was fraudulent by entering into the Stipulation) was subordinate to their prior recorded Abstract. As a result, they were entitled to the balance of the net sale proceeds.

The Judgment Creditors rejected Trustee's standing argument, contending that while he was the only party able to prosecute the fraudulent transfer claims, the result of setting aside the transfer did not necessarily invalidate their Abstract. They also rejected Trustee's argument that his recovery and preservation of the Residence for the estate terminated their competing claims, contending that when a trustee recovers fraudulently transferred property, the recovered property still remains subject to whatever secured liens were against it.

In response, Trustee contended that the Judgment Creditors were precluded from arguing Cass held an equitable interest in the Residence after the transfer because that argument was outside the scope of the Joint PTO, and therefore it had been waived. Trustee further argued that the issue of whether Cass retained a beneficial interest in the Residence other than a life estate was barred because the bankruptcy court had already ruled in the

-13-

Homestead Exemption Order that no portion of the sale proceeds were subject to Cass's claimed homestead exemption. Finally, Trustee argued that the Avoidance Judgment, which avoided, recovered and preserved the remainder interest in the Residence, clearly established that the Judgment Creditors' claims of any superior lien rights to Zeman were dismissed with prejudice.

The trial on Trustee's complaint and the Judgment Creditors' counterclaims was held on April 6, 2012. As an initial housekeeping matter, all exhibits in the Joint Compendium of Exhibits were admitted into evidence, and all stipulated facts in the Joint PTO were deemed established. After hearing oral argument from the parties, the bankruptcy court requested further briefing from the parties. The parties timely submitted the ordered post-trial briefs, and the trial was continued to June 12, 2012.

At the continued trial on June 12, 2012, the bankruptcy court announced that it was taking the matter under submission.

The bankruptcy court entered its Memorandum Decision in favor of the Judgment Creditors and dismissing Trustee's complaint on August 31, 2012. The court found that Cass retained an equitable interest in the Residence despite the fraudulent transfer to Zeman. Therefore, when the Judgment Creditors recorded their Abstract, they perfected a judgment lien under California law, which attached to Cass's equitable interest in the Residence. In re Cass, 476 B.R. at 608. This result was obtained whether a fraudulent transfer is void or void ab initio under state law. Id. Nevertheless, the court held that under California law, a fraudulent transfer is void ab initio, except to the extent that

-14-

the CUFTA has made it voidable for good faith purchasers for value. Id. Trustee had not established that the CUFTA changed the common law that fraudulent transfers are "void" as to the transferor's creditors. Id. at 617-18. Any cases relied upon by Trustee either were distinguishable on the facts or applied law of another state, which was substantively different from California. Id. at 616-19. Accordingly, Trustee was to apply the sale proceeds from the Residence to satisfy the Judgment Creditors' claims against Cass, except those interests superior to their November 1, 2005 judgment lien. Id. at 618-19.[10]

On October 5, 2012, the bankruptcy court entered an amended judgment against Trustee's complaint and in favor of the Judgment Creditors on their counterclaims (the "Declaratory Relief Judgment").[11]

Trustee timely appealed the Declaratory Relief Judgment on October 9, 2012. On that same date, he also filed a motion for stay pending appeal in the bankruptcy court. The Judgment Creditors opposed the motion. The bankruptcy court denied the motion for stay pending appeal for Trustee's failure to demonstrate that he would suffer irreparable injury. For these

[10] The bankruptcy court rejected Trustee's contention that various preclusion doctrines barred litigation of the Judgment Creditors' claims that the Abstract attached to the Residence or that the transfer was void ab initio. In re Cass, 476 B.R. at 610-13.

[11] The original judgment was entered on October 4, 2012, but Trustee had lodged an objection to the form of that judgment because it included what he contended were impermissible findings that had been separately stated in the memorandum decision. The bankruptcy court agreed and entered the amended judgment, which had deleted all findings.

-15-

same reasons, the BAP motions panel denied Trustee's emergency motion for stay pending appeal on November 9, 2012.

**II. JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(F) and (K).  We have jurisdiction under 28 U.S.C. § 158.

**III. ISSUES**

1.    Could the Judgment Creditors seek a determination as to whether their judgment lien attached to the Residence?

2.    Did the bankruptcy court abuse its discretion by not applying issue preclusion or judicial estoppel?

3.    Did the bankruptcy court err in determining that Cass retained an equitable interest in the Residence to which their judgment lien attached despite the purported transfer of her remainder interest to Zeman?

**IV. STANDARDS OF REVIEW**

We review de novo the bankruptcy court's conclusions of law and review for clear error its findings of fact.  McDonald v. Checks-N-Advance, Inc. (In re Ferrell), 539 F.3d 1186, 1189 (9th Cir. 2008)(per curiam).

We review a bankruptcy court's interpretation of California law de novo in order to determine if it correctly applied the substantive law.  Kipperman v. Proulx (In re Burns), 291 B.R. 846, 849 (9th Cir. BAP 2003); Astaire v. Best Film & Video Corp., 116 F.3d 1297, 1300 (9th Cir. 1997)(issues of state law are reviewed de novo).

We review questions regarding the application of "res judicata, including issue and claim preclusion, de novo, as mixed

questions of law and fact in which legal questions predominate." Khaligh v. Hadaegh (In re Khaligh), 338 B.R. 817, 823 (9th Cir. BAP 2006), aff'd, 506 F.3d 956 (9th Cir. 2007)(citations omitted). "Once it is determined that preclusion doctrines are available to be applied, the actual decision to apply them is left to the trial court's discretion." Id. at 823 (citations omitted).

We review a bankruptcy court's application of judicial estoppel for abuse of discretion. Cheng v. K&S Diversified Invs., Inc. (In re Cheng), 308 B.R. 448, 452 (9th Cir. BAP 2004)(citing Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 1999)). Likewise, we review a bankruptcy court's interpretation of its own order for an abuse of discretion. Arenson v. Chi. Mercantile Exch., 520 F.2d 722, 725 (7th Cir. 1975). A bankruptcy court abuses its discretion if it applied the wrong legal standard or its findings were illogical, implausible or without support in the record. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

## V. DISCUSSION

**A. The Judgment Creditors could seek a determination in the Declaratory Relief Adversary about whether their judgment lien attached to the Residence.**

Under § 541(a)(1), as of the commencement of the bankruptcy case, a debtor's interest in property, whether a legal or an equitable interest, becomes property of the bankruptcy estate. Property of the estate also includes any interest in property recovered under § 550[12] and any interest in property that is

---

[12] Section 550(a) provides:

(a) Except as otherwise provided in this section, to the
(continued...)

-17-

preserved for the benefit of the estate under § 551.[13] Section 541(a)(3), (a)(4).

Section 550 allows the trustee to recover fraudulently transferred property for the benefit of the estate to the extent that a transfer is avoided as fraudulent under either §§ 544 or 548. Once a trustee recovers an asset for the estate through one of the enumerated transfer or lien avoidance provisions, § 551 automatically preserves the asset for the benefit of the estate. Heintz v. Carey (In re Heintz), 198 B.R. 581, 584 (9th Cir. BAP 1996)(citing The Retail Clerks Welfare Trust v. McCarty (In re Van De Kamp's Dutch Bakeries), 908 F.2d 517, 520 (9th Cir. 1990)); In re Schmiel, 319 B.R. 520, 529 (Bankr. E.D. Mich. 2005)(once the transfer of an asset is avoided, § 551 automatically returns that "stick" to the "bundle" that makes up estate property and preserves it for the benefit of the estate).

Facing an expired statute of limitations problem precluding an avoidance action under § 548, Trustee proceeded under § 544 to avoid Cass's fraudulent transfer of the Residence to Zeman.

---

[12](...continued)
extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from--
    (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
    (2) any immediate or mediate transferee of such initial transferee.

[13] Section 551 provides:

Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate but only with respect to property of the estate.

-18-

Section 544 is what conferred standing to Trustee in place of the Judgment Creditors to prosecute the Fraudulent Transfer Adversary. See Gen. Elec. Capital Auto Lease, Inc. v. Broach (In re Lucas Dallas, Inc.), 185 B.R. 801, 804 (9th Cir. BAP 1995)(trustee lacks standing to assert independent state law created fraudulent transfer claims and can only do so by way of § 544(b)). Under § 544(b)(1), a trustee "may avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law" - i.e., state law. The transfer here was avoidable by Trustee as a fraudulent transfer under California law, specifically, the CUFTA, found in CCC §§ 3439 et seq. See Kupetz v. Wolf, 845 F.2d 842, 845 (9th Cir. 1988)(Section 544(b) permits a trustee to stand in a creditor's shoes to assert any state law claims that a creditor may have.).

Trustee argues that the bankruptcy court erred when it entered judgment in favor of the Judgment Creditors because their claims as to whether they held an interest in the Residence, that the transfer was void ab initio, or that their purported lien attached to the Residence were cut off once he avoided, recovered and preserved the Residence for the benefit of the estate under §§ 550 and 551. He further argues that because the Residence was preserved under § 551, their judgment lien disappeared. Trustee also argues that he was the only party with standing to seek avoidance of the fraudulent transfer and recovery of the Residence.

It is undisputed that Trustee was the only party with standing to prosecute what became the Fraudulent Transfer Adversary against Cass and Zeman. See Estate of Spirtos v. One

-19-

San Bernardino Cnty. Super. Ct., 443 F.3d 1172, 1776 (9th Cir. 2006); In re PWS Holding Corp., 303 F.3d 308 (3d Cir. 2002), cert. denied, 538 U.S. 924 (2003)(although individual creditors may be permitted to bring a fraudulent transfer action derivatively on behalf of the estate, they have no standing to prosecute such an action in their own right and for their own benefit, even if they would have had standing to do so outside of bankruptcy). However, Trustee fails to cite any authority supporting his contention that, because a trustee has avoided and recovered property initially subject to a secured creditor's fraudulent transfer lawsuit, such creditor loses all rights to any claims or defenses it may have. The bankruptcy court rejected this argument at trial. We disagree that Quarre v. Saylor (In re Saylor), 178 B.R. 209 (9th Cir. BAP 1995), aff'd 108 F.3d 219 (9th Cir. 1997) supports Trustee's position. Saylor did not address the lien rights of a judgment creditor, as that was not an issue in the case. Saylor merely held that a judgment creditor did not have standing to prosecute an exception to discharge claim under § 523(a)(6) based on an alleged fraudulent transfer of real property.

To the extent Trustee argues that the Judgment Creditors dismissed their claims by entering into the Stipulation and Avoidance Judgment, we reject this argument for the same reasons articulated by the bankruptcy court, which we explain in more detail below. As for Trustee's policy argument that recovered property is not intended to benefit just one creditor but is to be equitably shared by them all, this policy pertains to unsecured creditors, not secured ones. See generally §§ 507 and 726.

-20-

Trustee also fails to cite any authority holding that, once a fraudulently transferred property is avoided under state law and recovered and preserved under §§ 550 and 551, a secured creditor's perfected judgment lien (or other perfected security interest) disappears.  Section 551 does not operate to somehow make a secured creditor's perfected lien disappear upon the trustee's later avoidance of the transfer.  In re Mathiason, 129 B.R. 173, 177 (Bankr. D. Minn. 1991) aff'd, 16 F.3d 234 (8th Cir. 1994). That statute is intended to prevent junior lienholders from improving their position at the expense of the estate when a senior lien is avoided.  Id. (citing S.Rep. No. 989, 95th Cong., 2d Sess. 91 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787)). "It is not intended to strip from recovered property, interests equal or senior to the transfer avoided."  Id.  Assuming that the Judgment Creditors had a perfected senior lien in the Residence, which we believe they did, Trustee took the Residence subject to that senior lien.  Trustee also offers no argument to counter California law that perfected judgment liens are extinguished only by the recording of an acknowledgment of satisfaction of the underlying judgment or by the judgment creditor's release of the lien.  CCP § 697.400(a), (c).

Accordingly, the bankruptcy court did not err by allowing the Judgment Creditors to assert their claims against Trustee or raise any defenses thereto.

**B.  The bankruptcy court did not abuse its discretion when it determined that issue preclusion and judicial estoppel did not preclude the Judgment Creditors' claims.**

Although Trustee asserted the doctrines of claim preclusion, issue preclusion, judicial estoppel, law of the case and election

-21-

of remedies before the bankruptcy court and in his statement of issues on appeal in his opening brief, he provides argument only as to the doctrines of issue preclusion and judicial estoppel. Therefore, we address only these two, as he has waived any right to assert the other doctrines. See McLain v. Calderon, 134 F.3d 1383, 1384 n.2 (9th Cir. 1998)(issue mentioned in statement of issues but not discussed in brief is considered waived).

### 1. Issue preclusion as to the Avoidance Judgment

"The preclusive effect of a federal court judgment is determined by federal common law, but the rule of decision differs depending upon whether the federal court's jurisdiction over the issue was based on diversity or federal question." Haliburton Energy Servs., Inc. v. McVay (In re McVay), 461 B.R. 735, 741 (Bankr. C.D. Ill. 2012)(citing Taylor v. Sturgell, 553 U.S. 880, 891 (2008)). "Under federal common law, a federal diversity judgment is to be accorded the same preclusive effect that would be applied by the state courts in the state in which the federal diversity court sits." Id. (citing Taylor, 553 U.S. at 891 n.4); Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 508 (2001)). "For judgments in federal question cases, federal common law supplies the rule of decision." Id. (citing Taylor, 553 U.S. at 891).

The bankruptcy court applied California issue preclusion law to the Avoidance Judgment, which avoided the fraudulent transfer of the Residence under California law by Trustee under § 544(b). Trustee recovered and preserved the Residence for the benefit of the estate under §§ 550 and 551. Both the Avoidance Judgment and Homestead Exemption Order were entered by the bankruptcy court.

Hence, we have two judgments entered by a federal court deciding what were ultimately federal questions, although rooted in state law. Therefore, we conclude that federal issue preclusion law should have been applied in this case. Nonetheless, whether federal or California issue preclusion law[14] applied, the result is the same. The Judgment Creditors were not precluded from seeking a determination that their judgment lien attached to the Residence.

Issue preclusion "bars 'successive litigation of an issue of fact or law that was actually litigated and resolved in a valid court determination essential to that prior judgment,' even if the issue recurs in the context of a different claim." Taylor, 553 U.S. at 892 (quoting New Hampshire v. Maine, 532 U.S. 742, 748-49 (2001)). As the party asserting issue preclusion, Trustee had the burden of establishing all elements required for its application. Palm v. Klapperman (In re Cady), 266 B.R. 172, 183 (9th Cir. BAP 2001)(citing Watson v. Shandell (In re Watson), 192 B.R. 739, 747 (9th Cir. BAP 1996); Berr v. FDIC (In re Berr), 172 B.R. 299, 306 (9th Cir. BAP 1994)). Under the federal standard, four elements must be met for issue preclusion to apply: (1) The issue sought to be precluded must be the same as that

_____

[14] California issue preclusion law is virtually identical to federal law. In California, the party asserting issue preclusion must establish the following five elements: (1) the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding; (2) this issue must have been actually litigated in the former proceeding; (3) it must have been necessarily decided in the former proceeding; (4) the decision in the former proceeding must be final and on the merits; and (5) the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. Lucido v. Super. Ct., 51 Cal.3d 335, 341 (Cal. 1990)(citations omitted).

-23-

involved in the prior action; (2) the issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the final judgment. Id. (citing In re Berr, 172 B.R. at 306).

Trustee argues that the bankruptcy court should have applied issue preclusion to the Avoidance Judgment and ruled that the Judgment Creditors were precluded from seeking a determination that the transfer was "void ab initio." Specifically, he contends the bankruptcy court erred in finding that the Avoidance Judgment did not adjudicate the same issues as the instant Declaratory Relief Adversary when the Avoidance Judgment established that the transfer occurred, was "avoided," and restored all ownership interests in the Residence to Trustee for the benefit of the estate.

In deciding that Trustee had not met his burden of establishing the elements for issue preclusion to the Avoidance Judgment, the bankruptcy court was interpreting its own order. We accord substantial deference to a court's interpretation of its own orders and will not overturn that interpretation unless we are convinced it amounts to an abuse of discretion. Marciano v. Fahs (In re Marciano), 459 B.R. 27, 35 (9th Cir. BAP 2011). See Hallett v. Morgan, 296 F.3d 732, 739-40 (9th Cir. 2002)(special consideration is given to the trial court's interpretation of its own orders); Colonial Auto Ctr. v. Tomlin (In re Tomlin), 105 F.3d 933, 941 (4th Cir. 1997)(the bankruptcy judge who has presided over a case from its inception is in the best position to clarify the court's rulings).

-24-

We are not convinced that the bankruptcy court's interpretation of the Avoidance Judgment was an abuse of discretion. It determined that the Avoidance Judgment did not address, let alone adjudicate, the issues related to the Judgment Creditors' claims of: (1) whether the judgment lien from the recorded Abstract attached to the Residence; (2) whether the judgment lien is superior to Trustee's interests; or (3) whether the transfer from Cass to Zeman was void or voidable. In re Cass, 476 B.R. at 610-11. It further found that the Avoidance Judgment did not eliminate the Judgment Creditors' rights to their claims for declaratory and injunctive relief. Id. at 611. To the contrary, the parties expressly agreed in the December 19 Stipulation that those claims would be dismissed without prejudice in the Fraudulent Transfer Adversary so they could be adjudicated in this action, and that the dismissal of those claims would not give rise to any adverse legal or other effect on any party or issue to be determined in this action. Id. Accordingly, Trustee had not established that the issue was actually and necessarily decided. We see no abuse of discretion in the bankruptcy court's decision.

For these same reasons, we also reject Trustee's argument that issue preclusion foreclosed the Judgment Creditors from claiming that the Abstract attached to any equitable interest in the Residence, other than Cass's life estate. Because the parties had agreed to dismiss the remaining claims between them so that those claims/issues could be decided in the Declaratory Relief Adversary, the Judgment Creditors could seek a determination of whether the Abstract attached to any interest Cass had at the time

-25-

it was recorded, equitable or otherwise.

**2.    Issue preclusion as to the Homestead Exemption Order**

The bankruptcy court rejected Trustee's "flawed" contention that the Homestead Exemption Order precluded the Judgment Creditors from asserting they had perfected a judgment lien based on a post-transfer recordation of the Abstract. In re Cass, 476 B.R. at 612 n.3. To be precise, the court determined that issue preclusion did not apply because: (1) the Homestead Exemption Order was not a judgment on the merits because the court denied Cass's claimed exemption as moot in light of her death; and (2) the perfection issue was not actually litigated in the homestead exemption litigation and was not actually and necessarily decided in the court's denial of the claimed homestead exemption. Id.

Trustee argues that the Homestead Exemption Order necessarily determined Cass did not have an interest in the previously transferred remainder interest in the Residence because, if it had, such interest would have been subject to the homestead exemption. He fails to address the bankruptcy court's other finding that the perfection issue was not actually litigated in the context of the homestead exemption.

In deciding that Trustee had not met his burden of establishing the elements for issue preclusion to the Homestead Exemption Order, the bankruptcy court was interpreting its own order, and we give substantial deference to that interpretation. In re Marciano, 459 B.R. at 35. Again, Trustee has not convinced us that the bankruptcy court abused its discretion in determining the Homestead Exemption Order did not preclude the Judgment

-26-

Creditors from asserting they had perfected their judgment lien. We also note that, although it is not the basis for our decision, Trustee did not provide in the record any of the underlying documents filed in the homestead exemption matter to support his contention about what the bankruptcy court "necessarily decided." We further reject Trustee's contention that Cass's remainder interest would have been subject to a homestead exemption. A debtor who has voluntarily transferred property in fraud of creditors prepetition, which is later recovered, loses any exemption in that recovered property. Hitt v. Glass (In re Glass), 164 B.R. 759, 762 (9th Cir. BAP 1994); § 522(g).[15]

### 3. Judicial estoppel as to the Avoidance Judgment

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." Hamilton, 270 F.3d at 782 (citing Rissetto v. Plumbers & Steamfitters Local 343, 94 F.3d 597, 600-01 (9th Cir. 1996)). The doctrine is aimed at not only preventing a party from gaining an advantage by asserting inconsistent positions, but also ensuring "the orderly administration of justice and . . . the

---

[15] Section 522(g) provides:

Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510 (c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—
(1)　(A) such transfer was not a voluntary transfer of such property by the debtor; and
　　　(B) the debtor did not conceal such property; or
(2) the debtor could have avoided such transfer under subsection (f)(1)(B) of this section.

-27-

dignity of judicial proceedings," and to "protect against a litigant playing fast and loose with the courts." Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990).

Trustee contends the Judgment Creditors were judicially estopped from asserting the inconsistent position that the fraudulent transfer was void and had never occurred when they sought a judgment in state court "avoiding" the transfer and restoring title to Cass, thereby admitting Cass had no equitable interest in the Residence and that her transferred interest had to be restored for their lien to attach. Trustee further argues that the Judgment Creditors failed to preserve in the Avoidance Judgment, which avoided the transfer under CCC §§ 3439.04 and 3439.07, the argument that the transfer could later be attacked as void ab initio under CCC § 3439.10.

The bankruptcy court determined that judicial estoppel did not apply because the Judgment Creditors had not taken inconsistent positions in the Fraudulent Transfer Adversary and in the Declaratory Relief Adversary. In re Cass, 476 B.R. at 613. We agree. First, judicial estoppel generally applies only to bar a party from making a factual assertion in a legal proceeding which directly contradicts an earlier assertion made in the same proceeding or a prior one. Russell, 893 F.2d at 1037. The Judgment Creditors' request for relief of "avoiding" and setting aside the fraudulent transfer is not a factual assertion, and their complaint did not admit that Cass had no equitable interest in the Residence. In fact, the Judgment Creditors alleged that the transfer was a "fraudulent transfer within the meaning of common law of fraudulent transfers and within the meaning of [CCC]

-28-

§§ 3439.04 and 3439.05, and should be avoided and set aside." California common law treats such transfers void as to creditors. Hence, their position was not inconsistent from the earlier suit. As for Trustee's second argument, the bankruptcy court found, and we agree, that the Judgment Creditors preserved their remaining claims in the December 19 Stipulation and December 20 Order.

Accordingly, the bankruptcy court properly declined to apply the doctrine of judicial estoppel in this case.

**C.** **The bankruptcy court did not err when it determined that Cass had an equitable interest in the Residence to which the judgment lien attached upon recordation of the Abstract.**

**1. Governing California law**

The CUFTA permits defrauded creditors to reach property in the hands of a transferee. <u>Fidelity Nat'l Title Ins. Co. v. Schroeder</u>, 179 Cal.App.4th 834, 840 (Cal. Ct. App. 2009)(citing <u>Mejia v. Reed</u>, 331 Cal.4th 657, 663 (Cal. 2003)). It is undisputed that Cass's transfer of the Residence to Zeman was a fraudulent transfer, and that Zeman was not a good faith transferee under CCC § 3439.08.[16] It is also undisputed that the transfer was avoided under CCC §§ 3439.04 and 3439.07.

A judgment lien on real property is created by recording an abstract of a money judgment with the county recorder. CCP § 697.310(a); <u>Weeks v. Pederson (In re Pederson)</u>, 230 B.R. 158, 160 (9th Cir. BAP 1999)(in California the recording of an abstract of a money judgment in the county creates a judgment lien

---

[16] CCC § 3439.08(a) provides:

A transfer or an obligation is not voidable under paragraph (1) of subdivision (a) of Section 3439.04, against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee.

-29-

on real property, which attaches to all debtor's interests in real property in the county). Under CCP § 697.340(a), a recorded judgment lien on real property attaches to all interests the judgment debtor has in real property in the county where the lien is created, including equitable interests, and subjects that property to enforcement of the money judgment.

### 2. Analysis

The bankruptcy court initially found "as a factual matter" that Cass had an equitable interest in the Residence after she made the transfer to which the Judgment Creditors' lien attached upon recording of the Abstract. In re Cass, 476 B.R. at 608. Elaborating on this point, the court explained that Cass retained an equitable interest in the Residence based on the agreement that Zeman would reconvey title to Cass upon demand:

> For all intents and purposes, the Residence was the Debtor's property. She continued to enjoy the right to use the property through her retention of the life estate in the property, and she continued to control Zeman's right to dispose of the property, as evidenced by the side agreement between Debtor and Zeman to re-convey the remainder interest. On this record, the court finds by a preponderance of the evidence that the Debtor retained an equitable interest in the Residence after she purportedly transferred a remainder interest to her daughter.

Id. at 616. The bankruptcy court then held that because Cass had at least an equitable interest in the Residence, despite the purported transfer of the remainder interest to Zeman, and because CCP § 697.340(a) provides that a judgment lien attaches to all interests in real property, including equitable interests, the Judgment Creditor's judgment lien attached to this interest when they recorded the Abstract per CCP § 697.310(a). Id. at 616-17.

Trustee contends that the Abstract did not attach under

-30-

CCP § 697.340(a), because it was not filed until after the transfer and, because the transfer was not avoided until May 29, 2008, the Abstract had nothing to which it could attach at the time of recordation in 2005 other than Cass's life estate, which lapsed upon her death. Trustee further argues that the Judgment Creditors did not plead a constructive or resulting trust in the Fraudulent Transfer Lawsuit, and the Avoidance Judgment did not establish a constructive or resulting trust based on any alleged equitable interest Cass retained in the Residence to which the Abstract could attach.

The bankruptcy court did not address the issue of constructive or resulting trusts in its decision. It determined, as a matter of fact, that Cass retained an equitable interest in the Residence because Zeman had agreed to reconvey the remainder interest to Cass upon demand. Trustee has not disputed this fact. He argues, however, in his reply brief, that the bankruptcy court failed to cite any authority to support its conclusion that Cass held an equitable interest in the Residence to which the Abstract could have attached. Although we are free to reject this argument because it was not raised in Trustee's opening brief, we exercise our discretion to address it. See Smith v. Marsh, 194 F.3d 1045, 1052 (9th Cir. 1999)(issues not raised in appellant's opening brief are deemed waived). We preface our discussion by noting that we apply California law to determine the nature and extent of a debtor's interest in property. See Butner v. United States, 440 U.S. 48, 54 (1979).

Under California law, a transferee of property transferred in fraud of creditors by the transferor holds only nominal or bare

legal title to the property conveyed; the transferor retains the beneficial and equitable interest in the conveyed property, which remains liable to the debts of creditors. Sasaki v. Kai, 56 Cal.App.2d 406, 410 (Cal. Ct. App. 1942)(citing McAlvay v. Consumer's Salt Co., 112 Cal.App. 383, 394 (Cal. Ct. App. 1931)); Alhambra Bldg. & Loan Assn. v. DeCelle, 47 Cal.App.2d 409, 412 (Cal. Ct. App. 1941)(grantee holds "mere naked legal title" of fraudulently conveyed property when he holds it in secret trust for the judgment debtor, who remains the beneficial owner of the property); 30 Cal. Jur. 3d ENFORCEMENT OF JUDGMENTS § 118 (2013) ("Where only nominal title is conveyed to a third party by the judgment debtor, the debtor's beneficial interest in the property is liable for the debts of subsequent creditors as well as those existing at the time of the transfer."). See also Breeden v. Smith, 120 Cal.App.2d 622, 664-66 (Cal. Ct. App. 1953)(although in the context of a homestead exemption, the court recognized that a judgment debtor who transfers his interest in property to the transferee to hold in secret trust in fraud of creditors but who remains in exclusive possession of that property retains full equitable interest in the property; transferee holds only bare legal title); and Putnam Sand & Gravel Co., Inc. v. Albers, 14 Cal.App.3d 722, 726 (Cal. Ct. App. 1971)(holding same); and Tarlesson v. Broadway Foreclosure Invs., LLC, 184 Cal.App.4th 931, 937 (Cal. Ct. App. 2010)(citing Breeden and Albers and holding same). This result is based on the principle that "one cannot be the equitable owner of property and still have it exempt from his debts." Sasaki, 56 Cal.App.2d at 410 (quoting McAlvay, 112 Cal.App. at 394).

Accordingly, we agree with the bankruptcy court that Cass retained an equitable interest in the Residence, despite the purported transfer. Because CCP § 697.340(a) provides that a perfected judgment lien attaches to <u>all</u> debtor's interests in real property, including <u>equitable</u> interests, the Judgment Creditor's judgment lien attached to this equitable interest when they recorded the Abstract per CCP § 697.310(a) on November 1, 2005.

As for Trustee's resulting trust theory, we fail to see where he raised this argument before the bankruptcy court. As such, we treat it as waived. <u>See</u> <u>Ellsworth v. Lifescape Med. Assocs., P.C. (In re Ellsworth)</u>, 455 B.R. 904, 919 (9th Cir. BAP 2011)(failing to demonstrate that argument was properly raised to the bankruptcy court can result in waiver).[17]

We also disagree with Trustee that the bankruptcy court erred in considering the state court's comments that Cass "effectively owned" the Residence to conclude that Cass had an equitable interest in the Residence to which the Judgment Creditors' lien could attach. Because these comments by the state court in the

---

[17] Even if we did address this issue, we disagree with Trustee that under <u>Schroeder</u>, <u>supra</u> at 29, which did not involve a CUFTA claim, the Judgment Creditors were required to plead a resulting trust cause of action if they wanted a ruling that the Abstract attached to any equitable interest created by the resulting trust. <u>Schroeder</u> did not hold that a creditor <u>must</u> plead a cause of action for a resulting (or constructive) trust in order for an abstract of judgment to attach to a fraudulent debtor's equitable interest in property. Further, even if the Judgment Creditors were required to plead this equitable remedy, because this case was tried on the merits, the bankruptcy court could have afforded such relief whether they requested it or not. <u>See</u> <u>Am. Motorists Ins. Co. v. Cowan</u>, 127 Cal.App.3d 875, 883 (Cal. Ct. App. 1982) (after a trial on the merits the court may afford any form of relief supported by the evidence and as to which the parties were on notice, whether requested in the pleadings or not)(citing CCP § 580 and 3 Witkin, Cal. Procedure PLEADING, §§ 374, 376, pp. 2038, 2039-40)(2d ed. 1971)).

-33-

Defamation Lawsuit were part of the undisputed facts in the Joint PTO, which were deemed established at trial, the bankruptcy court was well within its discretion to consider them. Further, nothing in the bankruptcy court's decision indicates that it relied solely on these comments to reach the conclusion that Cass owned an equitable interest in the Residence at the time the Abstract was recorded. To the contrary, the bankruptcy court reached this conclusion on its own findings and application of California law.

## VI. CONCLUSION

We conclude that Cass held an equitable interest in the Residence at the time the Judgment Creditors recorded their Abstract, and that equitable interest was subject to attachment by her creditors. Because their perfected judgment lien attached to Cass's equitable interest in the Residence pursuant to CCP § 697.340(a), Trustee took the Residence subject to the Judgment Creditors' senior interest when he avoided and recovered it. As a result, the Declaratory Relief Judgment is AFFIRMED, and Trustee must apply the sale proceeds from the Residence to satisfy the Judgment Creditors' claims against Cass, except those interests superior to their November 1, 2005 judgment lien.